CASE NO. 24-488

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

SFR INVESTMENTS POOL 1, LLC,

PLAINTIFF –APPELLANT,
v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

DEFENDANT – APPELLEE,

ON APPEAL FROM THE U.S. DISTRICT COURT FOR THE DISTRICT OF NEVADA
THE HONORABLE GLORIA M. NAVARRO | CASE NO. 2:22-cv-01942-GMN-MDC

APPELLANT'S OPENING BRIEF

KAREN L. HANKS, ESQ.
NEVADA BAR NO. 9578

**HANKS LAW GROUP**
7625 Dean Martin Dr., Ste. 110
Las Vegas, NV 89139-5974
Email: karen@hankslg.com
Telephone: (702) 758-8434
Facsimile: (725) 239-3415
*Attorneys for Appellant*

1

## CORPORATE DISCLOSURE STATEMENT

SFR Investments Pool 1, LLC's ("SFR") is wholly owned by SFR Investments, LLC. SFR Investments, LLC is wholly owned by SFR Funding, LLC. SFR Funding, LLC is owned by Xiemen Limited Partnership. Xieman Investments, Ltd. and John Gibson are the partners of Xiemen Limited Partnership. No publicly held corporation owns 10% or more of Xiemen Investments, Ltd. stock.

DATED this 12th day of July, 2024.

HANKS LAW GROUP

*/s/ Karen L. Hanks*
KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
*Attorneys for SFR Investments Pool 1, LLC*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ....................................................2

TABLE OF CONTENTS .............................................................................. ii

TABLE OF AUTHORITIES ......................................................................... iii

JURISDICTIONAL STATEMENT ...................................................................5

ISSUES PRESENTED .................................................................................8

STATEMENT OF THE CASE .......................................................................8

FACTUAL BACKGROUND ..........................................................................9

     A.    Fannie Mae's Non-Judicial Foreclosure. ...............................9

     B.    SFR's Complaint ...............................................................10

     C.    Fannie Mae's Motion to Dismiss. .......................................11

SUMMARY OF ARGUMENT ......................................................................12

STANDARD OF REVIEW ..........................................................................12

ARGUMENT .........................................................................................13

I.    ENFORCING THE ENTIRE DEBT OF A HOME LOAN REQUIRES ACCELERATION..............................................................................13

II.    THE TERM "OBLIGATION" DOES NOT MEAN THE PAYOFF AMOUNT/ENTIRE DEBT. .....................................................................15

III.    THERE EXISTS NO AFFIRMATIVE ACT THAT CLEARLY AND UNEQUIVOCALLY ACCELERATED THE DEBT..................................18

CONCLUSION ........................................................................................25

CERTIFICATE OF COMPLIANCE...............................................................26

## TABLE OF AUTHORITIES

### CASES

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................13

*Bridges v. Nationstar*,
  515 P.3d 1270, 253 Ariz. 532 (Ariz. S. Ct. 2022)......................... 15, 21, 23

*Brosnahan v. Caliber Home Loans, Inc.*,
  2023 WL 4743253 (July 25, 2023) (Ct. App. Az. Div. 1) .................... 21, 23

*Cadle Co. II, Inc. v. Fountain*,
  281 P.3d 1158 (Nev. 2009) (unpublished disposition).......................... 18, 19

*Clayton v. Gardner*,
  107 Nev. 468, 813 P.2d 997 (1991)....................................... passim

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) .........................................................12

*Doe Dancer I v. La Fuente, Inc.*,
  137 Nev. 20, 481 P.3d 860 (2021)..................................................17

*Edelstein v. Bank of New York Mellon*,
  128 Nev. 505, 286 P.3d 249 (2012)..............................................13

*First Am. Title Ins. Co. v. Coit*,
  412 P.3d 1088 (Nev. 2018) (unpublished) ...................................13

*Ford Motor Credit Co. v. Milhollin*,
  444 U.S. 555, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980) .................................14

*Galloway v. Truesdell*,
  83 Nev. 13, 422 P.2d 237 (1967)..................................................17

*Hicks v. Small*,
  69 F. 3d 967 (9th Cir. 1995) .........................................................12

iii

*LV Debt Collect, LLC v. Bank of New York Mellon as Tr. for
    Certificateholders of CWMBS, Inc., CHL Mortg. Pass-Through
    Tr. 2005-02, Mortg. Pass-Through Certificates, Series 2005-02,*
    534 P.3d 693 (Nev. 2023)....................................................................... 9, 18, 20

*Thomas v. Nevada Yellow Cab Corp.,*
    130 Nev. 484, 327 P.3d 518 (2014)............................................................17

*United States v. Feterl,*
    849 F.2d 354 (8th Cir. 1988) .......................................................................23


**S**TATUTES

NRS 104.3118(1) ...........................................................................................13

NRS 106.240 ..................................................................................................24

NRS 107.080(3) ............................................................................... 14, 16, 19

NRS 107.200(3) ..............................................................................................24

NRS 40.427 ............................................................................................. 16, 18

NRS 40.462(2)(b ..................................................................................... 17, 24

Uniform Consumer Credit Code of 1968, § 2.203; § 2.204(3) ..............................14


**O**THER **A**UTHORITIES

Restatement (Third) of Property (Mortgages) § 8.1 ......................................... 14, 22

iv

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under FRAP 3A(b)(1). The district court entered an order granting Federal National Mortgage Association's ("Fannie Mae") motion to dismiss on January 22, 2024 (ER-004-013.) Thereafter, on January 26, 2024, SFR filed a notice of voluntary dismissal of its claim against Newrez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"). While the notice did not state the dismissal was with prejudice, this was SFR's intent. Under *Concha v. London*, 62 F.3d 1493, 1506 (9th Cir. 1995), a court can consider circumstances outside the dismissal document to determine whether it was intended to be with prejudice. If in fact the Court deems the dismissal is with prejudice, then this Court has jurisdiction. *Id.* at 1509 ("We therefore treat the Conchas' 41(a)(1) notice as a dismissal with prejudice as to all defendants, and conclude that we have jurisdiction…")

Here, the claim against Shellpoint related solely to Shellpoint's failure to comply with NRS 107.200 and NRS 107.210. Specifically, as the successor in interest to the Property, SFR is entitled to request information about the loan underlying the deed of trust. When such a request is made, the beneficiary must deliver statements 21 days from the date of receipt of the request. SFR requested an NRS 107.200 and 210 statement on November 16, 2021, but Shellpoint failed to deliver the statements within the 21-day period. As a result, SFR had no choice but

to file suit to force Shellpoint's compliance so SFR could obtain information regarding the loan, the most pertinent being the amount required to discharge the loan. SFR did not file suit until June 20, 2022, and at that time, it pled only one claim, the claim against Shellpoint for violation of NRS 107.200 and 210. Under NRS 107.300, the penalty for failing to comply is statutory damages of $300 plus any actual damages.

After SFR filed suit, on June 24, 2022, Shellpoint provided the information required under NRS 107.200 and 210 as of December 7, 2021 (the date both 107 statements should have been delivered). Typically, where this has happened in other cases, i.e. where SFR finally receives the information it was entitled to, SFR either dismisses the case with prejudice or negotiates a settlement. The timeline varies for each individual case, but this is usually the ultimate outcome. To the extent this Court is wondering how many cases this entails, Shellpoint was a repeat offender, as were many other beneficiaries, thus since 2022, SFR has filed 80+ lawsuits to force compliance.

Fannie Mae foreclosed on the Property, and on October 17, 2022, SFR amended its complaint to add a claim for wrongful foreclosure/declaratory judgment/quiet title based on the fact the information Shellpoint provided to SFR after SFR filed suit indicated the loan was not accelerated at the time of foreclosure, yet Fannie Mae foreclosed as if the amount owed was accelerated. After SFR filed

its amended complaint, Shellpoint/Fannie Mae removed the case to federal court and then filed a motion to dismiss. The parties entered into a discovery plan and agreed the close of discovery would be September 5, 2023. SFR did not conduct discovery into the NRS 107 claim in part because it was evident on its face Shellpoint violated NRS 107.200 and 210, but also in part because the claim served its purpose and was no longer a front and center claim. In fact, but for the foreclosure in this case, SFR would not have amended its complaint and would have resolved the NRS 107 claim like it has in countless other cases.

Thus, when SFR voluntarily dismissed this claim, it was done with the intent to be with prejudice. While SFR did suffer damages as a result of Shellpoint's failure to comply with Nevada law, the damages associated with this claim pale in comparison to the damages/relief associated with the unlawful bidding claim. Additionally, there was no intent on the part of SFR to manipulate appellate jurisdiction. *See Galaza v. Wolf*, 954 F.3d 1267, 1270 (9th Cir. 2020). SFR's counsel considered several avenues, including but not limited to filing a motion, stipulating with Shellpoint, or issuing an offer of judgment.[1] But SFR settled on voluntary dismissal believing this was the most cost-efficient means for both the Court and the parties. Because these other avenues were considered, the dismissal was intended to

---

[1] SFR has issued offers of judgment to Shellpoint in other cases involving NRS 107 claims and Shellpoint has accepted these offers.

be with prejudice, and the absence of this word was a mere oversight. However, SFR acknowledges the second factor under *Galaza* i.e. the district court's participation is still missing. But this factor exists so there exists a "clear indication of finality[,]" so as to avoid "confus[ing] the parties and the public." *Galaza*, 954 P.3d at 1272 quoting *Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 889 (9th Cir. 2003). SFR can amend its dismissal to add the phrase "with prejudice" to achieve the intent of the second factor.

For these reasons, SFR asks that the Court treat SFR's dismissal as "with prejudice" such that this Court does have jurisdiction. On January 26, 2024, SFR filed its notice of appeal. (ER-237-239.)

## ISSUES PRESENTED

1) Whether the loan was not accelerated at the time Fannie Mae foreclosed on the loan such that Fannie Mae's credit bid which exceeded the amount in default, was illegal?

## STATEMENT OF THE CASE

This is an appeal from an order dismissing a claim with prejudice against Fannie Mae. SFR owned Property that was subject to Fannie Mae's deed of trust. Fannie Mae non-judicially foreclosed on the Property, and at the foreclosure sale, SFR bid based on information Fannie Mae provided about the loan and current Nevada case law regarding acceleration. Fannie Mae, however, credit bid as if the

loan was accelerated, despite there being no evidence it was accelerated. As such, SFR filed a claim alleging Fannie Mae illegally credit bid over and above SFR's bid, and SFR is entitled to the Property or excess sale proceeds. But the district court dismissed SFR's claim reasoning it was "unaware of any legal basis upon which SFR's claim could rest." This court should reverse and remand.

## FACTUAL BACKGROUND

### A. Fannie Mae's Non-Judicial Foreclosure.

On September 11, 2012, SFR acquired title to the Property[2] after successfully bidding on the Property at a publicly held foreclosure auction in accordance with NRS 116.3116, et seq. (ER-217-226 at ¶ 7.) At the time of the HOA foreclosure, a deed of trust was recorded against the Property. (*Id.* at ¶ 8.) On November 5, 2021, a Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust ("NOD") was recorded against the Property. (*Id.* at ¶ 9.) The language in the NOD is identical in all substantive respects to the NOD analyzed by the Nevada Supreme Court in *LV Debt.*[3] (ER-137-144.)

On November 16, 2021, upon receipt of the NOD, SFR sent a request for statements pursuant to NRS 107.200 and NRS 107.210 to Shellpoint, the then

---

[2] 3743 Prairie Orchid Avenue, North Las Vegas, NV 89081, Parcel No. 123-31-211-055 (the "Property").

[3] *LV Debt Collect, LLC v. Bank of New York Mellon as Tr. for Certificateholders of CWMBS, Inc., CHL Mortg. Pass-Through Tr. 2005-02, Mortg. Pass-Through Certificates, Series 2005-02,* 534 P.3d 693 (Nev. 2023).

beneficiary of record. (ER-217-226 at ¶ 10.) Shellpoint never delivered the statements as mandated by the statues within the time required by the statutes. (*Id.* at ¶ 12.) On February 16, 2022, a Notice of Trustee's Sale ("NOS") was recorded against the Property. (*Id.* at ¶ 14; ER-146-147.) On February 22, 2022, an assignment, which assigned the deed of trust to Fannie Mae was recorded against the Property. (ER-217-226 at ¶ 15.)

On June 24, 2022, Shellpoint (the servicer for Fannie Mae) provided information about the loan in response to SFR's request which indicated the default amount was $300,341.80 as of December 7, 2021. (*Id.* at ¶ 26; ER-148-163.) At the foreclosure sale which took place on July 29, 2022, Fannie Mae made an opening credit bid of $320,000. (ER-217-226 at ¶ 28; 29.) SFR, understanding Fannie Mae could only credit bid up to the amount in default because the loan was not accelerated, bid $310,000, which was an amount SFR had to approximate was the current default based on the information provided by Shellpoint. (*Id.* at ¶ 32; 33.) Fannie Mae then made an additional credit bid of $401,800.00. (*Id.* at ¶ 34.) This additional credit bid was the winning bid and the Property reverted to Fannie Mae. (*Id.* at ¶ 35.)

## B. **SFR's Complaint**

In its complaint, SFR alleged that Fannie Mae illegally credit bid. (*Id.* at ¶ 36.) Specifically, SFR alleged there was no actions by Fannie Mae which accelerated the

debt, and thus, the only amounts due and owing at the time of the foreclosure sale, and being foreclosed upon, was the delinquent amount/amount in default. (*Id.* at ¶ 56.) SFR further alleged under basic tenants of foreclosure law, and pursuant to NRS 40.462, absent acceleration, Fannie Mae was only permitted to collect up to and including the amount of delinquency as of the date of the sale. (*Id.* at ¶ 57.) SFR further alleged that Fannie Mae's bids over the default amount unlawfully inflated bidding and were wrongful, causing damage to SFR by way of SFR losing its Property because SFR was ready, willing and able to bid $1 over the amount in default at the foreclosure sale. (*Id.* at ¶ 58-63.)

## C. **Fannie Mae's Motion to Dismiss.**

On March 6, 2023, Fannie Mae filed a motion to dismiss. (ER-053-167.) On January 22, 2024, the district court granted Fannie Mae's motion. (ER004-13.) The district court found because NRS 40.427 defines "foreclosure sale" as "the sale of real property to enforce an obligation secured by a mortgage or lien on the property, including the exercise of a trustee's power of sale pursuant to NRS 107.080" Fannie Mae was entitled to collect the full amount owed on the loan. (*Id.*) The district court further found after issuing a notice of default, the borrowers failed to cure that default, and Fannie Mae issued a notice of sale "indicating that the entire amount on the Loan was due." (*Id.*)

## SUMMARY OF ARGUMENT

This Court should reverse the district court's dismissal of SFR's claim for wrongful foreclosure/declaratory judgment/quiet title against Fannie Mae and permit this claim to move forward. There exists not evidence that Fannie Mae took any affirmative act to clearly and unequivocally accelerate the debt such that at the time of the foreclosure sale, Fannie Mae could only foreclose on the debt due at that time, which absent acceleration, was not the entire debt. Having illegally credit bid the entire debt amount, SFR stated a plausible claim for relief against Fannie Mae such that the district court erred in dismissing SFR's claim. This Court should reverse and remand.

## STANDARD OF REVIEW

This Court reviews de novo a district court's order granting a motion to dismiss. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 963 (9th Cir. 2018). Federal Rule of Civil Procedure ("FRCP") 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss under FRCP 12(b)(6) for failure to state a claim, the Court accepts "all allegations of material fact" as true and construes them in a light most favorable to the non-moving party. *Hicks v. Small*, 69 F. 3d 967, 969 (9th Cir. 1995). Additionally, "a well-pleaded complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

**ARGUMENT**

## I. ENFORCING THE ENTIRE DEBT OF A HOME LOAN REQUIRES ACCELERATION.

In Nevada, a home loan consists of two documents: the promissory note and the deed of trust. *Edelstein v. Bank of New York Mellon*, 128 Nev. 505, 512, 286 P.3d 249, 254 (2012).The note is the promise to pay the debt, while the deed of trust is the lien on the property which secures the debt under the promissory note. *Id.* When a borrower defaults, the lender can choose "the judicial process for foreclosure pursuant to NRS 40.430 or the 'nonjudicial' foreclosure-by-trustee's sale procedure under NRS Chapter 107." *Id.* at 254.

NRS 104.3118(1) provides "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within 6 years after the due date or dates stated in the note or, **if a due date is accelerated, within 6 years after the accelerated due date**." *See* NRS 104.3118(1) (emphasis added). In *Coit*, the Nevada Supreme Court recognized due in full language as language which makes the entire note due…" *First Am. Title Ins. Co. v. Coit*, 412 P.3d 1088 (Nev. 2018) (unpublished)The U.S. Supreme Court has also recognized this concept, "a creditor accelerates to avoid further delay by demanding immediate payment of the outstanding debt." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 561, 100 S.

Ct. 790, 795, 63 L. Ed. 2d 22 (1980) citing Uniform Consumer Credit Code of 1968,

§ 2.203, official comment 2, 7 U.L.A. 315–316 (1978); § 2.204(3), id., at 317.

But importantly, "where contract obligations are payable by installments, the

limitations statute begins to run only with respect to each installment when due,

**unless the lender exercises his or her option to declare the entire note due.**" *Id.*

citing *Clayton v. Gardner*, 107 Nev. 468, 470, 813 P.2d 997, 999 (1991) (emphasis

added). NRS 107.080 also speaks of acceleration, and provides, "[t]he notice of

default and election to sell must describe the deficiency in performance or payment

and may contain a notice of intent to declare the entire unpaid balance due if

acceleration is permitted by the obligation secured by the deed of trust…" NRS

107.080(3).

Thus, while a lender immediately funds the full loan amount, per contract it

allows the borrower to pay back that amount in installments. Most importantly, if a

lender wants to enforce every installment of a note, it must accelerate those

installments which have yet to become due, otherwise it is only

enforcing/foreclosing on those installments that are past due at the time of

enforcement. Restatement (Third) of Property (Mortgages) § 8.1, comment a. As the

U.S. Supreme Court put it, "[t]he prerogative of acceleration affords the creditor a

mechanism for collecting the outstanding portion of a debt on which there has been

a partial default. *Milhollin*, 444 U.S. at 561, 100 S. Ct. at 794. Thus, regardless of

which process a lender chooses, in order to enforce the whole debt, the debt must be accelerated. Most importantly, "[i]f acceleration under the terms of the note is optional, a lender 'must undertake some affirmative act to make clear to the debtor it has accelerated the obligation.'" *Bridges v. Nationstar*, 515 P.3d 1270, 253 Ariz. 532, 536 (Ariz. S. Ct. 2022)

## II. THE TERM "OBLIGATION" DOES NOT MEAN THE PAYOFF AMOUNT/ENTIRE DEBT.

Here, per the terms of the Note it is an installment contract. Specifically, the Note provides a total loan amount of $246,990, but payment of this amount is payable in monthly installments beginning November 1, 2007 until October 1, 2037. (ER-160-163 at ¶ 3.) The Note further provides it is uniform secured note and that the security instrument i.e. the deed of trust, "describes how/and under what conditions [borrower] may be required to make immediate payment in full of all amounts [borrower] owe[s] under this Note." (*Id.* at ¶ 10.) The deed of trust then explains in the event of a default in payment, the lender "shall give notice to Borrower prior to acceleration" and then provides various information that must be included in said notice. (ER088 at ¶ 22.) The deed of trust then explains if the borrower fails to cure the default, "Lender, at its option…may invoke the power of sale, **including** the right to accelerate full payment of the Note." (*Id.*) (emphasis added.)

In the present case, the district court rendered the term "obligation" found in NRS 40.427, as total payoff, but in so doing, ignored the terms of the Note which rendered it an installment contract. What is more, NRS 40.451 defines "indebtedness" as

> [T]he principal balance of the obligation secured by a mortgage or other lien on real property, together with all interest accrued and unpaid prior to the time of foreclosure sale, all costs and fees of such a sale, all advances made with respect to the property by the beneficiary, and all other amounts secured by the mortgage or other lien on the real property in favor of the person seeking the deficiency judgment.

Given that the Legislature used a different term to define the full debt within Chapter 40, it stands to reason that "obligation" does not mean the full debt or payoff, and yet this is the definition the district court attached to it for purposes of determining the loan in this case was accelerated. In other words, if "obligation" means pay-off or entire debt, then there would be no reason to create the term "indebtedness" and yet the Legislature did create this word and defined it.

Additionally, NRS 107.080(3)'s use of the term "obligation" also reflects it does not mean the full debt/payoff. NRS 107.080(3) states, "[t]he notice of default and election to sell must describe the deficiency in performance or payment and may contain a notice of intent to declare the entire unpaid balance due if acceleration is permitted by the obligation secured by the deed of trust…" If obligation already means the accelerated amount then this sentence makes no sense.

16

In fact, even the notice of default uses the term "obligations" as a reference to the monthly installments as opposed to the total debt because it states,

> [T]hat a breach of, and default in, obligations for which such Deed of Trust is security has occurred in that payment has not been made of: The installments of principal and interest which became due on 9/1/2009, and all subsequent installments of principal and interest through the date of this Notice…

(ER-137.)

Likewise, the district court's reliance on NRS 40.462(2)(b) is unavailing. This section deals with the priority of distribution of sale proceeds after a foreclosure sale. NRS 40.462(2)(b) provides as second in line, the "[s]atisfaction of the obligation being enforced by the foreclosure sale." But exactly what obligation is being enforced is the question. Again, the Legislature did not use the word "indebtedness" which is defined as the payoff/entire debt and under the canon of construction "expressio unius est exclusio alterius, the expression of one thing is the exclusion of another." *Doe Dancer I v. La Fuente, Inc.*, 137 Nev. 20, 34, 481 P.3d 860, 873 (2021) citing *Thomas v. Nevada Yellow Cab Corp.*, 130 Nev. 484, 488, 327 P.3d 518, 521 (2014) (quoting *Galloway v. Truesdell*, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967)).

To conclude the definition of foreclosure sale presumes acceleration, ignores the various references to acceleration in the Note, the deed of trust, NRS Chapter

17

107, NRS Chapter 104, and Nevada case law,[4] and renders acceleration meaningless. Under the district court's logic, so long as a lender takes a security to sale, the loan is presumed accelerated. NRS 40.427 is a general law that covers a wide range of loans enforceable via sale which include residential loans, commercial loans, private loans, home equity loans, to name a few. But the district court's order holds that by virtue of there being a foreclosure sale, the loan is automatically accelerated no matter the parties' contracted terms. This is contrary to Nevada law. Therefore, this Court should reverse the district court's order granting dismissal.

## III. THERE EXISTS NO AFFIRMATIVE ACT THAT CLEARLY AND UNEQUIVOCALLY ACCELERATED THE DEBT.

As a secondary basis for its order, the district court found the notice of default was a notice of intent to accelerate, and thereafter, when the borrower failed to cure the default, issued a notice of sale "indicating that the entire amount on the Loan was due." (ER-011.) This conclusion is wrong for several reasons. First, the notice of default does not comply with Paragraph 22 of the Deed of Trust. Paragraph 22 requires that "[t]he notice shall specify:"

---

[4] *Clayton,* 107 Nev. at 470, 813 P.2d at 999; *LV Debt Collect,* 534 P.3d at 699; *Cadle Co. II, Inc. v. Fountain*, 281 P.3d 1158 (Nev. 2009) (unpublished disposition).

acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or

Here, the notice of default does not contain items (c) and (d). Nowhere in the notice of default does it state a date by which the borrower must cure the default. (ER-137-144.) There being no date by which to cure the default, the notice also fails to comply with NRS 107.080(3). The notice of default also fails to state that should the borrower fail to cure the default, this may result in acceleration. (*Id.*) Finally, the notice of default does not inform the borrower of the right to reinstate after acceleration. (*Id.*) While the notice references reinstatement, it does not explain anything about this being available after acceleration. (*Id.*) Thus, the notice of default cannot serve as the notice of intent to accelerate, and there being no notice of acceleration, SFR stated a plausible claim that the loan was not accelerated at the time of the foreclosure sale.

But even if the notice of default could serve as the notice of acceleration, Fannie Mae offered no evidence of any affirmative act taken on its part to clearly and unequivocally accelerate the loan after issuing the notice of default, which is required by Nevada law. *Clayton,* 107 Nev. at 470, 813 P.2d at 999 (1991). *See also*, *Cadle*, 281 P.3d 1158.

The district court found the notice of sale "indicat[ed]" the loan was fully due but indicate is not the same as clear and unequivocal. What is more, *LV Debt* cuts against a notice of sale qualifying as a document that can accelerate a loan. In *LV Debt*, the Nevada Supreme Court noted acceleration of a debt must "be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lender's intention." *LV Debt,* 534 P.3d at 699 citing *Clayton,* 107 Nev. at 470, 813 P.2d at 999.

If that was not enough, the notice of default, in addition to not explaining acceleration could occur, confusingly suggests it has already occurred. (ER-137.) But the Nevada Supreme Court has ruled a "Notice of Default c[an] not itself accelerate the loan under the terms of the acceleration clause because BNYM could not exercise that option until [the borrower] failed to cure the default by the date specified in the Notice of Default." *LV Debt*, 534 P.3d at 698. The Court further noted, "even if a deed of trust has an acceleration clause that authorizes the lender to accelerate a loan via a Notice of Default, such language would be invalid because NRS 107.080(2)-(3) requires a Notice of Default to give a borrower 35 days to cure the default, which is antithetical to the concept of 'accelerating' a loan." *Id.*

Given that Nevada law requires that "acceleration of a debt must 'be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lender's intention,'" *Clayton,* 107 Nev. at 470, 813 P.2d at 999. SFR stated a plausible claim

that the loan was not accelerated at the time of sale.

But the real problem is the notice of sale does not mention acceleration or making the loan wholly due, or declaring all sums immediately due and payable, or any other language that would tell a borrower the whole debt is due now. See *Brosnahan v. Caliber Home Loans, Inc.*, 2023 WL 4743253 (July 25, 2023) (Ct. App. Az. Div. 1) citing *Bridges*, 253 Ariz. at 534. ("The First NOTS, which does not mention acceleration, cannot reasonably be construed as providing a clear notice of acceleration.") In *Bridges*, the Arizona Supreme Court held, a notice of sale by itself is not an affirmative act that accelerates the debt. *Bridges*, 253 Ariz. at 536. Additionally, the district court's statement that the notice of sale "indicat[ed] that the entire amount on the Loan was due" is equally not enough. In *Brosnahan*, the court found the language in the notice of sale which stated, "remaining principal sum" was due, was not enough to deem the loan accelerated. *Id.* The court reasoned that 'when a trustee's sale is merely noticed…the entire debt is not accelerated because under the plain language of the statute a debtor can cure the default and reinstate the contract by paying only the 'amount then due' before the trustee's sale is held." *Id.* citing *Bridges*, 253 Ariz. at 534.

Here, the district court relied on the notice of default language which provides the time to reinstate may be extended to five days before the sale, as supporting acceleration, when in reality this cuts against acceleration. Fannie Mae cited

Paragraph 19 of the Deed of Trust, but Paragraph 19 is titled "Borrower's Right to Reinstate **<u>After</u>** Acceleration." (ER-086.) (Emphasis added.) Thus, the very title of this paragraph contemplates acceleration has already occurred, and yet there is nothing in the public record nor did Fannie Mae point to any affirmative act on its part whereby it clearly and unequivocally accelerated the debt. This paragraph only applies after acceleration, and SFR's reading of Paragraph 19 also comports with the Restatement's interpretation.

> The Federal National Mortgage Association—Federal Home Loan Mortgage Corporation (FNMA-FHLMC) mortgage—deed of trust form, which is widely used for home loan transactions, affords the mortgagor the right to defeat acceleration by tendering arrearages or curing any nonmonetary default until five days prior to the foreclosure sale (in a power of sale foreclosure) or the foreclosure decree (in a judicial foreclosure).

Restatement (Third) of Property (Mortgages) § 8.1, comment e.

Thus, the language in the notice of default regarding reinstating five days before the sale offers no guidance as to whether and when the loan was accelerated. It bears noting, in other cases, Fannie Mae has argued Paragraph 19 proves the loan is NOT wholly due via acceleration.[5] And applying Arizona's reasoning, it would appear the ability to reinstate also cuts against acceleration. *Brosnahan*, 2023 WL

---

[5] *See* Case No. 2:22-cv-00192-JAD-BNW (ECF No. 40); 2:22-cv-00195-JCM-BNW (ECF no. 43); 2:22-cv-00415-APG-VCF (ECF No. 34); 2:22-cv-00630-CDS-EJY (ECF No. 9); 2:22-cv-00614-JAD-VCF (ECF No. 12). This is not an exhaustive list.

4743253 citing Bridges, 253 Ariz. at 535 ("Because this provision grants the borrower this right of reinstatement, a notice of trustee's sale alone is not sufficient to accelerate the debt.")

Again, under Nevada law, acceleration requires an affirmative act that must "be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lender's intention." *Clayton,* 107 Nev. at 470, 813 P.2d at 999 (1991) quoting *United States v. Feterl,* 849 F.2d 354, 357 (8th Cir. 1988). The crux of SFR's claim for wrongful foreclosure/quiet title/declaratory judgment is based on case law and arguments made by Fannie Mae in other cases. Here, SFR's complaint alleged the loan was not accelerated at the time of the sale based on Nevada law as interpreted by the courts thus far, and therefore Fannie Mae only foreclosed on the amount in default at the time of the sale. Fannie Mae's entire motion acknowledges the merits of the premise that a loan must be accelerated prior to a sale to enforce all obligations under the loan that would have become due, but then never points to where it did this prior to the sale. Sure, Fannie Mae points to provisions which acknowledge the right to accelerate and discuss notice before acceleration and even the borrower's right to reinstate after acceleration, but SFR's claim does not dispute this remedy exists. Instead, SFR's complaint alleges there is no evidence the loan was accelerated prior to the sale.

23

Of course, if as Fannie Mae seemed to intimate to the district court, that five days before the scheduled sale date the loan is deemed accelerated, then this opens the door to re-arguing countless cases where NRS 106.240 was alleged because notices of sale of are never cancelled or rescinded. At least SFR has never seen it done. Thus, for every property where a lender recorded a notice of sale, and the borrower did not cure by the fifth day before the sale, under Fannie Mae's reasoning in this case, the loan was accelerated.

While not addressed by the district court, the 107 response, which SFR alleged in its complaint, also indicated the loan was not accelerated. Specifically, NRS 107.200(3) requires the beneficiary identify "the date the payment of the debt is due" but Shellpoint, as servicer for Fannie Mae, responded, "[t]his loan is due for the September 1, 2009 payment." (ER-148-150.) NRS 107.200(3) does not require information about when any periodic payment would be due or was due, but rather when is the debt due. If the whole debt was due, i.e. accelerated, then the answer would have been the whole loan is due and payable now or immediately. Additionally, NRS 107.200(1) requires the beneficiary identify "the amount of the unpaid balance of the debt." In its late response, Fannie Mae stated, the amount is $300,341.80. (ER-148-150.)

As Fannie Mae acknowledged and as SFR alleges, NRS 40.462(2)(b) only permits a foreclosing party to satisfy "the obligation **being enforced** by the

foreclosure sale" and here based on Nevada law and information provided by Fannie Mae, the obligation being enforced on the date of the sale was only the amount in default as of that date, not any accelerated amount. (Emphasis added.) For these reasons, SFR stated a plausible claim, and dismissal was inappropriate.

Simply put, Fannie Mae's arguments highlight how this case cannot possibly be decided at a motion to dismiss phase. Discovery is necessary to determine when and how the loan was accelerated, if at all. But right now, this Court must accept SFR's allegation the loan was not accelerated as true, and Fannie Mae admits, by acknowledging the loan had to be accelerated, that if SFR's allegations prove true through discovery, SFR stated a plausible claim. For these reasons, this Court should reverse and remand.

## CONCLUSION

SFR stated a plausible claim for relief, and therefore this Court should reverse and remand.

DATED this 12th day of July, 2024.

/s/ Karen L. Hanks
KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
*Attorneys for Appellant*

### CERTIFICATE OF COMPLIANCE

This brief complies with the length limits permitted by Ninth Circuit Rule 32-1. The brief is 5,063 words, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

DATED: July 12, 2024.

**HANKS LAW GROUP**

*/s/ Karen L. Hanks*
KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
*Attorneys for Appellant*

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 12, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Karen L. Hanks*
*Hanks Law Group*