No. 24-488

---

# United States Court of Appeals
# For the Ninth Circuit

---

**SFR INVESTMENTS POOL 1, LLC,**
*Plaintiff-Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION,**
*Defendant-Appellee.*

---

On Appeal from the United States District Court for the District of Nevada
Before the Honorable Gloria M. Navarro, Case No. 2:22-cv-01942-GMN-MDC

---

### APPELLEE'S ANSWERING BRIEF

---

ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
NATALIE L. WINSLOW, ESQ.
Nevada Bar No. 12125
PAIGE L. MAGASTER, ESQ.
Nevada Bar No. 15557
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, NV 89134
Telephone: (702) 634-5000

*Attorneys for Defendant-Appellee Federal National Mortgage Association*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Federal National Mortgage Association ("Fannie Mae") is presently under the conservatorship of the Federal Housing Finance Agency.  Fannie Mae does not have a parent corporation, and according to SEC filings, no publicly held corporation holds more than 10% of Fannie Mae's common (voting) stock.

## **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................ I

TABLE OF CONTENTS ................................................................................... II

TABLE OF AUTHORITIES ............................................................................ III

INTRODUCTION ................................................................................................ 1

STATEMENT OF JURISDICTION .....................................................................2

ISSUES PRESENTED ..........................................................................................3

PERTINENT STATUTORY BACKGROUND ....................................................5

STATEMENT OF THE CASE .............................................................................5

    I.      The Loan ................................................................................................5

    II.     HERA, FHFA, and the Conservatorships ............................................5

    III.    The HOA Foreclosure and the Prior Quiet-Title Action ......................6

    IV.    The Foreclosure and the Initial Complaint ...........................................7

    V.     SFR's Amended Complaint and This Appeal .......................................9

STANDARD OF REVIEW ................................................................................10

SUMMARY OF THE ARGUMENT .................................................................11

ARGUMENT .....................................................................................................13

    I.      This Court Does Not Have Jurisdiction to Hear this Appeal .............13

    II.     SFR's Appeal Fails on the Merits in Any Event ................................17

           A.    Fannie Mae Was Entitled to Recover Up to the Full
                 Amount of Unpaid Balance on the Loan at Foreclosure .........18

           B.    A Ruling in SFR's Favor Would Contravene Federal
                 Law and Violate the Supremacy Clause ..................................39

CONCLUSION ..................................................................................................44

ADDENDUM .....................................................................................................45

CERTIFICATE OF COMPLIANCE ..................................................................46

CERTIFICATE OF SERVICE ...........................................................................47

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

### <u>Cases</u>

*Am. States Ins. Co. v. Dastar Corp.*,
318 F.3d 881 (9th Cir. 2003) ........................................................14, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................11

*Bank of Am., N.A. v. Santa Barbara Homeowners Ass'n*,
19-16922, 2022 WL 17076048 (9th Cir. Nov. 18, 2022) ...................42

*Bank of Am., N.A. v. T-Shack, Inc.*,
No. 20-15627, 2021 WL 5823705 (9th Cir. Dec. 6, 2021) ...................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................10, 26

*Berezovsky v. Moniz*,
869 F.3d 923 (9th Cir. 2017) .........................................................19, 42

*Bridges v. Nationstar*,
253 Ariz. 532 (2022) .............................................................34, 35, 36

*Brosnahan v. Caliber Home Loans, Inc.*,
2023 WL 4743253 (Ariz. Ct. App. July 25, 2023) ................34, 35, 36

*Callan v. N.Y. Cmty. Bank*,
643 F. App'x 666 (9th Cir. 2016) ...........................................................6

*Cincinnati Specialty Underwriters Ins. Co. v. Wood*,
856 F. App'x 695 (9th Cir. 2021) .........................................................17

*Collins v. Yellen*,
141 S. Ct. 1761 (2021) ...........................................................................39

*Concha v. London*,
62 F.3d 1493 (9th Cir. 1995) ................................................................15

*E.R.E. Ventures, LLC v. David Evans & Associates*,
812 F. App'x 459 (9th Cir. 2020) ........................................................16

*Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*,
893 F.3d 1136 (9th Cir. 2018) .............................................................42

*Fed. Hous. Fin. Agency v. City of Chicago*,
962 F. Supp. 2d 1044 (N.D. Ill. 2013) ................................................43

*Freeman v. FDIC*,
56 F.3d 1394 (D.C. Cir. 1995) .............................................................41

*Galaza v. Wolf*,
954 F.3d 1267 (9th Cir. 2020) ......................................................*passim*

*Jacobs v. Fed. Hous. Fin. Agency*,
908 F.3d 884 (3d Cir. 2018) ................................................................41

*LV Debt Collect, LLC v. Bank of N.Y. Mellon*,
534 P.3d 693 (Nev. 2023) .............................................................19, 36

*MacDonald v. United States*,
574 F. App'x 641 (9th Cir. 2014) ........................................................16

*Perry Capital LLC v. Mnuchin*,
864 F.3d 591 (D.C. Cir. 2017) ........................................................40, 41

*Posner v. U.S. Bank, N.A.*,
545 P.3d 1150 (Nev. 2024) ..........................................................*passim*

*Roberts v. Fed. Hous. Fin. Agency*,
889 F.3d 397 (7th Cir. 2018) ....................................................40, 41, 43

*Saticoy Bay LLC Series 9641 Christine View v. Fed. Nat'l Mortgage
Ass'n*,
417 P.3d 363 (Nev. 2018) ...................................................................19

*Saxton v. Fed. Hous. Fin. Agency*,
245 F. Supp. 3d 1063 (N.D. Iowa 2017), *aff'd*, 901 F.3d 954 (8th
Cir. 2018) ...........................................................................................43

*Skilstaf, Inc. v. CVS Caremark Corp.*,
669 F.3d 1005 (9th Cir. 2012) ............................................................10

iv

*Skylights LLC v. Byron*,
    112 F. Supp. 3d 1145 (D. Nev. 2015)...........................................................41, 42

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ...................................................................11

*Telematics Int'l, Inc. v. NEMLC Leasing Corp.*,
    967 F.2d 703 (1st Cir. 1992)...................................................................41

*Tillman v. RTC*,
    37 F.3d 1032 (4th Cir. 1994) ...................................................................41

*Tri-State Hotels, Inc. v. FDIC*,
    79 F.3d 707 (8th Cir. 1996) ...................................................................41

*United States v. Corinthian Colls.*,
    655 F.3d 984 (9th Cir. 2011) ...................................................................11

*West Coast Servicing, Inc. v. Kassler*,
    531 P.3d 81 (Nev. 2023) (unpublished)...........................................................19

*Wheeler v. City of Santa Clara*,
    894 F.3d 1046 (9th Cir. 2018) ...................................................................32

## **Statutes**

12 U.S.C. § 4511 *et seq.*.......................................................................5

12 U.S.C. § 4617 *et seq.*....................................................................*passim*

NRS 40.427..............................................................................24

NRS 40.430(2) ...........................................................................37

NRS 40.462...........................................................................32, 33

NRS 106.240.......................................................................*passim*

NRS 107.080 *et seq.*...............................................................*passim*

NRS 107.087 ............................................................................31

NRS 107.200 *et seq.*...............................................................*passim*

NRS 107.0805 ......................................................................................32

**<u>Other Authorities</u>**

*Black's Law Dictionary* (6th ed. 1990) ...................................................33

Fed. R. Civ. P. 12(b)(6) ....................................................................9, 10

Fed. R. Evid. 201(c)-(d) .........................................................................6

Fed. R. Civ. P. 54(c) ............................................................................14

Restatement (Third) of Property (Mortgages) § 1.1 (1997) ...................36

U.S. Const. art. VI, cl. 2 .......................................................................38

## INTRODUCTION

After being at the forefront of a decade-long litigation campaign designed to hinder lenders' ability to lawfully enforce their deeds of trust, Appellant SFR Investments Pool 1, LLC ("SFR") brought this action searching for yet another way to delay lawful foreclosures on properties it and other real-estate investors purchased for pennies on the dollar and now rent at market rates.  In the most recent wave of litigation, investors like SFR argued that they should receive free and clear title to properties because Nevada's ancient-lien statute, NRS 106.240, extinguished first-priority deeds of trust long before their maturity dates.

Nevada courts roundly rejected that argument.  So now, SFR pivots to a "gotcha" theory, seeking to contort lenders' position that the loans were not "wholly due" for purposes of NRS 106.240 into a purported concession that the loan at issue here was not "accelerated" for purposes of foreclosure.  SFR then argues that as a result, the beneficiary was not entitled to credit bid up to the full debt at foreclosure, but was instead limited to bidding up to only the amount of the underlying default.

This latest attempt to obtain free and clear title without having to fully pay off the loan encumbering the property also fails.  As the Nevada Supreme Court has recognized, whether a loan is "wholly due" for purposes of NRS 106.240 is a different question from whether the loan has been accelerated for purposes of foreclosure.  Thus, instead of revealing any inconsistency, SFR's attempt to twist

1

lenders' arguments in NRS 106.240 cases merely demonstrates SFR's fundamental misunderstanding of two distinct legal concepts.

At bottom, SFR's claim is nothing more than the opening gambit in what SFR hopes will be yet another wave of litigation seeking to undermine the repeatedly validated interests of mortgage owners like Appellee Federal National Mortgage Association ("Fannie Mae")—one in which real-estate investors like SFR will seek ex post facto re-examinations of completed foreclosures without identifying any concrete procedural defects. Indeed, SFR's requested relief in this action reveals its true motivation: SFR seeks an enormous financial windfall by judicial declaration that SFR has free and clear title without having to pay off the long-defaulted loan or even pay market value for the subject property. Nothing in the loan's terms or Nevada law supports this request.

The district court properly dismissed SFR's far-fetched claim as a matter of law. The district court was correct, and this Court should affirm.

## STATEMENT OF JURISDICTION

For the reasons discussed below, *infra* Section I, the Court lacks jurisdiction to hear this appeal. After the district court granted in part Fannie Mae's motion to dismiss on January 24, 2024, SFR voluntarily dismissed its sole remaining claim. ER-248. On the same day, SFR filed a notice of appeal. The district court never entered a final judgment.

2

On February 2, 2024, this Court issued an order stating that it may lack jurisdiction. *See* Dkt. No. 3. Specifically, the Court noted that "when a party that has suffered an adverse partial judgment subsequently dismisses any remaining claims without prejudice, and does so without the approval and meaningful participation of the district court, this court lacks jurisdiction under 28 U.S.C. § 1291." *Id.* (quoting *Galaza v. Wolf*, 954 F.3d 1267, 1272 (9th Cir. 2020)). The Court stayed briefing and ordered SFR to explain why the appeal should not be dismissed for lack of jurisdiction.

SFR filed its response and asked the Court to treat its voluntary dismissal as a dismissal with prejudice. Dkt. No. 6. Fannie Mae replied. Dkt. No. 8. On April 25, 2024, the Court discharged the show-cause order and reinstated briefing without ruling on the jurisdictional issue. *See* Dkt. No. 9. The Court denied SFR's request to treat its voluntary dismissal as a dismissal with prejudice and stated that Fannie Mae may renew its jurisdictional argument at the merits stage. *See id.*

For the reasons discussed in Section I of the Argument, this Court lacks jurisdiction.

## ISSUES PRESENTED

I.   Under this Court's precedent, if a party who receives an adverse partial judgment dismisses any remaining claims without prejudice and without the district court's participation, this Court lacks jurisdiction to hear the appeal.

SFR received an adverse partial judgment and then voluntarily dismissed its remaining claim without the district court's participation. Does this Court have appellate jurisdiction?

II. To the extent the Court concludes it has jurisdiction to hear the appeal, two issues are presented:

A. Both Nevada Law and the terms of the deed of trust at issue allow a lender to enforce the full unpaid balance of a mortgage loan at a foreclosure sale if the borrower defaults and fails to reinstate. Here, the borrowers defaulted and never reinstated, leading Fannie Mae and its servicer to invoke their authority to foreclose and seek up to the full unpaid balance of the Loan. Were Fannie Mae and its servicer able to recover only defaulted past payments and fees at foreclosure?

B. The federal statute governing the Federal Housing Finance Agency's ("FHFA") conservatorship of Fannie Mae—namely, the Housing and Economic Recovery Act of 2008 ("HERA")—protects conservatorship property from extinguishment or impairment via any state-law mechanism or process. SFR invokes state law in its attempt to extinguish or otherwise diminish the value of Fannie Mae's deed of trust without FHFA's consent. Does federal preemption provide an alternative ground for affirmance?

4

## PERTINENT STATUTORY BACKGROUND

Per Circuit Rule 28-2.7, Fannie Mae includes the relevant statutory provisions under HERA, 12 U.S.C. §§ 4617(a)(7), 4617(f), and 4617(j)(3), in an addendum.

## STATEMENT OF THE CASE

### I.     The Loan

In September 2007, Gabriel and Tammy Gordon ("Borrowers") borrowed $246,990 to purchase the property situated at 3743 Prairie Orchid Avenue in North Las Vegas ("Property"), executing a promissory note ("Note") and a deed of trust ("Deed of Trust," and together with the Note, the "Loan"). ER-076–077. In October 2007, Fannie Mae purchased the Loan and owned it at all relevant times. ER-102. Newrez LLC, dba Shellpoint Mortgage Servicing ("Shellpoint"), serviced the Loan on behalf of Fannie Mae at all relevant times. *See* ER-141.

### II.    HERA, FHFA, and the Conservatorships

In July 2008, in the midst of the Nation's housing-market crisis and a teetering national economy, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), establishing the Federal Housing Finance Agency ("FHFA") as an independent federal agency with regulatory authority over Fannie Mae and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and together with Fannie Mae, the "Enterprises"), among others. *See* 12 U.S.C. § 4511 *et seq.* HERA empowered FHFA's Director to place the Enterprises into federal conservatorships

in certain circumstances and granted FHFA an array of powers, privileges, and exemptions from otherwise applicable laws when acting as Conservator. 12 U.S.C. § 4617. On September 6, 2008, FHFA's then-Director exercised that authority and placed the Enterprises into federal conservatorships, where they remain today.[1]

### III. The HOA Foreclosure and the Prior Quiet-Title Action

After the Borrowers failed to pay their HOA assessments, the HOA foreclosed on the Property in September 2012. ER-125. SFR purchased the Property at the HOA foreclosure sale for $8,800. *Id.*

In July 2015, Fannie Mae's previous loan servicer brought an action against SFR, seeking an order confirming that the Deed of Trust survived the HOA foreclosure sale ("Prior Quiet-Title Action"). ER-109. In October 2018, the district court entered summary judgment in favor of Fannie Mae's prior servicer. ER-110. Specifically, the district court held that because Fannie Mae owned the Loan, a provision of HERA called the Federal Foreclosure Bar, 12 U.S.C. § 4617(j)(3),

---

[1] The Court should take judicial notice that Fannie Mae has been under federal conservatorship since 2008. *See* Fed. R. Evid. 201(c)-(d) ("The court may take judicial notice on its own" at any stage of the proceeding.); *see also Callan v. N.Y. Cmty. Bank*, 643 F. App'x 666, 667 (9th Cir. 2016) (stating that the court "may take judicial notice of court filings and other matters of public record"); *Bank of Am., N.A. v. T-Shack, Inc.*, No. 20-15627, 2021 WL 5823705, at *1 n.2 (9th Cir. Dec. 6, 2021) ("The district court properly took judicial notice of the fact that Freddie Mac was in FHFA conservatorship."); *History of Fannie Mae and Freddie Mac Conservatorships*, FHFA (Aug. 22, 2024, 3:22 PM), https://www.fhfa.gov/Conservatorship/Pages/History-of-Fannie-Mae--Freddie-Conservatorships.aspx.

prevented the HOA sale from extinguishing the Deed of Trust. ER-108–110. The Nevada Supreme Court affirmed in November 2020. ER-193.

## IV. The Foreclosure and the Initial Complaint

On November 5, 2021, the Deed-of-Trust trustee recorded a notice of default, stating that the Borrowers had become delinquent as of September 1, 2009. ER-137. *Id.* The notice of default identified Shellpoint as the then-current holder of the Note, Deed of Trust beneficiary, and Loan servicer. ER-141–143.

SFR alleged in its district court complaint that after the 2021 notice of default was recorded, SFR sent "a request for statements pursuant to NRS 107.200 and NRS 107.210 to Shellpoint," as well as requesting that Shellpoint send SFR a copy of the Note. ER-005. SFR also alleged that it did not receive a timely response. *Id.*

In February 2022, the Deed-of-Trust trustee recorded a notice of sale against the Property, scheduling the foreclosure date for March 18, 2022 ("Notice of Sale"). ER-146. The Notice of Sale stated that "[t]he sale will be made … to pay the remaining principal sum of the note(s) secured by the Deed of Trust." *Id*. It went on to list the amount of unpaid Loan balance and other charges—also known as the payoff amount—as $499,656.48. *Id.* This amount was far more than the delinquency amount at the time: $300,341.80. ER-149. After an email exchange between SFR's and Shellpoint's counsel, Shellpoint agreed to postpone the Deed-of-Trust foreclosure sale. ER-005.

7

Despite knowing the payoff amount, SFR did not attempt to pay the full amount owed before the foreclosure sale. Instead, SFR filed its original complaint in state court on June 20, 2022, alleging that Fannie Mae violated NRS 107.200 *et seq*. by failing to respond to the request sent to Shellpoint, not Fannie Mae. *See* ER-196–199. On June 24, 2022—before the rescheduled foreclosure sale took place—Shellpoint provided SFR with the requested Loan information, current as of December 7, 2021. ER-149–150. Shellpoint's response included the amount necessary to cure the Borrowers' default and thereby bring the Loan current (the reinstatement amount) as well as the total amount owed on the Loan (the full payoff amount). *Id.* Specifically, Shellpoint's response stated that as of December 7, 2021, the amount necessary to reinstate the Loan was $300,341 while the amount necessary to discharge the Loan and thereby release the lien was $495,698. *Id.*

SFR did nothing. As the Loan remained in default, Fannie Mae foreclosed on the Property on July 29, 2022. ER-005. Fannie Mae made an opening credit bid of $320,000. *Id.* SFR made a bid on the Property for $310,000—the approximate amount necessary to satisfy only the delinquent amount. ER-005–006. Fannie Mae's winning bid was $401,800, and the Property reverted to Fannie Mae. ER-006. At the time of foreclosure, the total amount of unpaid debt together with the cost of the sale totaled $507,151, far exceeding SFR's bid. ER-120. Thus, the total

amount owed on the Loan at the time of the sale was approximately $200,000 more than what was required for the Borrowers to reinstate the Loan to performing status.

## V.    SFR's Amended Complaint and This Appeal

After the foreclosure sale, SFR amended the complaint. ER-217. The Amended Complaint added Shellpoint as a party and, in addition to maintaining the NRS 107.200 *et seq.* claim, added a wrongful-foreclosure claim against Fannie Mae and Shellpoint. *See* ER-060. SFR bases its wrongful-foreclosure claim on the argument that Fannie Mae was entitled to recover only the amount of the underlying default at the foreclosure sale (i.e., the reinstatement amount), as opposed to the full amount of unpaid balance on the Loan. *Id.* The Amended Complaint sought to regain title to the Property free and clear of the Deed of Trust for the amount of SFR's bid—i.e., the approximate delinquency amount of $310,000. *Id.* SFR requested alternative relief in the form of damages based on its loss of property or a declaration invalidating the sale. *Id.*

After removing the case to federal court, Fannie Mae moved to dismiss under Rule 12(b)(6) on March 6, 2023. ER-053. On January 22, 2024, the district court granted Fannie Mae's motion as to all claims except SFR's NRS 107.200 *et seq.* claim against Shellpoint. ER-004. Four days later, SFR filed a notice of voluntary dismissal of its remaining NRS 107.200 *et seq.* claim against Shellpoint. ER-248. That notice was submitted without the district court's participation, and it did not

9

specify that the dismissal was with prejudice. *See id.* SFR filed the notice of appeal the same day it voluntarily dismissed its remaining claim. *Id.*

In February 2024, this Court issued an order noting its precedent establishing that it lacks jurisdiction over an appeal if the appealing party dismisses its remaining claims without prejudice and without participation of the district court. Dkt. No. 3.1 at 1. The Court ordered SFR to "explain[] why the appeal should not be dismissed for lack of jurisdiction or move for voluntary dismissal of the appeal." Dkt. No 3.1 at 1. SFR filed a response asking the Court to treat the voluntary dismissal as one with prejudice, Dkt. No. 6, and Fannie Mae replied, Dkt. No. 8. In April 2024, this Court discharged the show-cause order and reinstated briefing. Dkt. No. 9.1. The Court declined to rule on the jurisdictional question and invited the parties to renew their arguments in their briefs. *See id.* at 2. SFR then filed its opening brief ("AOB"). Dkt. No. 14.

## <u>STANDARD OF REVIEW</u>

This Court reviews a Rule 12(b)(6) dismissal *de novo. See, e.g.*, *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

10

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not accept conclusory allegations or legal conclusions, or make unwarranted deductions of fact or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The Court may "affirm a 12(b)(6) dismissal on any ground supported by the record, even if the district court did not rely on the ground." *United States v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011) (quotation marks omitted).

## <u>SUMMARY OF THE ARGUMENT</u>

SFR's appeal fails at the starting gate because this Court lacks jurisdiction to hear it. Ninth Circuit precedent plainly states that "when a party that has suffered an adverse partial judgment subsequently dismisses any remaining claims without prejudice, and does so without the approval and meaningful participation of the district court, this court lacks jurisdiction under 28 U.S.C. § 1291." *Galaza v. Wolf*, 954 F.3d 1267, 1272 (9th Cir. 2020). That is exactly what happened here. After the district court partially granted Fannie Mae's motion to dismiss, SFR voluntarily dismissed its only remaining claim. It did not do so with prejudice, and it did not do so with the approval or meaningful participation of the district court. No final, appealable judgment was ever entered by the district court. Thus, under *Galaza*, this Court lacks jurisdiction to hear the appeal.

SFR's appeal fares no better on the merits. For starters, SFR admits that the "crux" of its claim is based on Fannie Mae's arguments in cases involving a statute that has no application here—namely, Nevada's ancient-lien statute, NRS 106.240. *See* AOB at 23. But SFR's argument in this case conflates the issue in NRS 106.240 cases—whether a loan is "wholly due" for purposes of Nevada's ancient-lien statute—with the issue in this case, which is whether the loan was accelerated for purposes of foreclosure. Because "wholly due" and "acceleration" are distinct concepts, SFR's attempt to use Fannie Mae's arguments in a different context against Fannie Mae here fails. In any event, SFR bases its argument here on the implausible assertion that, despite going through all the necessary steps to foreclose, the Loan was somehow never accelerated. Under this theory, SFR argues that Fannie Mae was entitled to recover only the amount of the underlying default at the foreclosure sale—not the entire amount due on the Loan.

The district court correctly rejected SFR's implausible theory. The terms of the Deed of Trust provide for acceleration and enforcement of up to the entire unpaid balance of the Loan after a default. Fannie Mae complied with those terms. SFR makes no factual allegations and points to no law suggesting Fannie Mae's foreclosure was improper. And the Notice of Sale recorded months before foreclosure left no doubt that Fannie Mae intended to collect more than the reinstatement amount. Indeed, it stated that the foreclosure sale would be to collect

12

$499,656—a sum far higher than the approximately $300,000 amount in default—thereby confirming that the beneficiary was foreclosing on the accelerated amount. As a result, this Court should affirm the district court's dismissal of SFR's wrongful-foreclosure claim.

Even if SFR's claim had merit (it does not), federal law precludes SFR's requested relief. Fannie Mae, an entity under FHFA's conservatorship, owned the Loan at all relevant times. As a result, three provisions of FHFA's organic statute—namely, 12 U.S.C. §§ 4617(f), 4617(j)(3), and 4617(a)(7)—prohibit any order that interferes with FHFA's statutory powers. SFR's requested relief would do just that. Although the district court dismissed SFR's wrongful-foreclosure claim on state-law grounds, this federal law provides an alternative ground to affirm.

## **ARGUMENT**

### I.    **This Court Does Not Have Jurisdiction to Hear this Appeal**

The Court should dismiss this appeal because SFR failed to perfect the appeal, thereby depriving the Court of jurisdiction to hear it. "[W]hen a party that has suffered an adverse partial judgment subsequently dismisses any remaining claims without prejudice, and does so without the approval and meaningful participation of the district court, this court lacks jurisdiction under 28 U.S.C. § 1291." *Galaza*, 954 F.3d at 1272. That is precisely what happened here: SFR's dismissal was made both (1) without prejudice and (2) without participation from the district court.

13

"Parties may only appeal 'final decisions of the district courts.'" *Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 884 (9th Cir. 2003) (quoting 12 U.S.C. § 1291). And here, the district court never entered a fully final judgment. After the district court dismissed both of SFR's claims against Fannie Mae, SFR's NRS 107.200 claim against Shellpoint—the only claim left in the case—remained active. *See* ER-012. SFR then unilaterally entered a notice of voluntary dismissal and, on the same day, filed its notice of appeal. ER-247–248. Because SFR acted unilaterally, the district court did not—and still has not—entered a final judgment. *See id.* While "voluntary dismissals with prejudice that produce an adverse final judgment may be appealed," the "entry of a final judgment by the district court is still needed to make appealable an order that otherwise would have been non-final." *Galaza*, 954 F.3d at 1271. No such judgment has been entered here.

Had SFR intended to dismiss the remaining claim with prejudice and obtain a final, appealable judgment, it could have sought a court order for dismissal with prejudice of its remaining claim, or it could have sought certification of the interlocutory order resolving the primary claims in Fannie Mae's favor as final under Rule 54(c) of the Federal Rules of Civil Procedure. But SFR did neither. In responding to this Court's show-cause order, SFR claimed that it chose not to seek input from the district court because "this was the most cost-efficient means for both the Court and the parties." Dkt. No. 6 at 4. But SFR's post-hoc justification for

14

skipping the necessary steps to obtain a final judgment cannot displace the "well-settled rule" requiring entry of a final judgment. *Galaza*, 954 F.3d at 1271.

Both conditions of *Galaza*—i.e., a lack of dismissal with prejudice and a lack of participation from the district court—are satisfied here.

*First*, SFR's voluntary dismissal was without prejudice. "Unless otherwise stated, [a voluntary] dismissal is ordinarily without prejudice." *Concha v. London*, 62 F.3d 1493, 1506 (9th Cir. 1995). SFR points to nothing in the record that suggests it intended its dismissal to be with prejudice. SFR's only argument is that its "counsel considered several avenues, including but not limited to filing a motion, stipulating with Shellpoint, or issuing an offer of judgment." AOB at 7. SFR goes on to say that "[b]ecause these other avenues were considered, the dismissal was intended to be with prejudice." *Id.* at 7-8. But the fact that SFR's counsel may have considered—but never pursued—other avenues says nothing about SFR's intent.[2] Because there is no final judgment, this Court lacks jurisdiction.

This Court recognizes a narrow exception to the general no-jurisdiction rule that allows the Court "in limited circumstances to treat a dismissal without prejudice

---

[2]    In its opening brief, SFR states that it "can amend its dismissal to add the phrase 'with prejudice' to achieve the intent of the second factor." AOB at 8. But despite several months elapsing from the time of this Court's show-cause order, SFR still has not done so. This Court should not allow SFR to have its cake and eat it too by avoiding dismissal with prejudice in the district court yet simultaneously maintaining appellate jurisdiction.

as one with prejudice, where that designation is consistent with the clear, consistent intent of the court and the parties." *MacDonald v. United States*, 574 F. App'x 641, 643 (9th Cir. 2014). But this exception plainly does not apply here, as neither the district court nor Fannie Mae had any input in SFR's decision to voluntarily dismiss its claims. Instead, SFR unilaterally decided to dismiss its claim. Under this Circuit's precedent, that voluntary dismissal should be treated as without prejudice.

*Second*, SFR's dismissal was made without participation from the district court. SFR admits as much: "SFR acknowledges the second factor under *Galaza* i.e. the district court's participation is still missing." AOB at 8. In essence, SFR asks the Court to ignore this factor altogether and determine there is jurisdiction even without the district court's participation. *See id.* But this Circuit's precedent "requires that the district court 'meaningfully participate' in the voluntary dismissal of claims in order for this court to have jurisdiction over the appeal." *E.R.E. Ventures, LLC v. David Evans & Associates*, 812 F. App'x 459, 460 (9th Cir. 2020). Indeed, in *American States*, the court dismissed an appeal for lack of jurisdiction because the district court was never empowered "to mange the development of [the] action, thereby facilitating efficiency [and] avoid[ing] [a] premature appeal." 318 F.3d at 889. The same is true here, and the same result must follow.

Courts "have declined to recognize an exception to the general no-jurisdiction rule where the parties attempted to create appellate jurisdiction through

manipulation." *Cincinnati Specialty Underwriters Ins. Co. v. Wood*, 856 F. App'x 695, 698 (9th Cir. 2021). Here, SFR's voluntary dismissal was plainly done with the intent to manufacture appellate jurisdiction. SFR filed its voluntary dismissal of the remaining claims on the very same day it filed its notice of appeal. ER248. And both the voluntary dismissal and notice of appeal were filed only four days after the district court issued its order partially granting the motion to dismiss. ER-247– ER248. This timing suggests SFR's only purpose in dismissing its remaining claim was to create appellate jurisdiction.

Under *Galaza*, this Court will not have jurisdiction until SFR corrects its jurisdictional error by obtaining meaningful participation from the district court in the final resolution of this case. Because that has not yet occurred, this Court lacks jurisdiction over this appeal and accordingly must dismiss it.

## II.    SFR's Appeal Fails on the Merits in Any Event

Even if this Court were to conclude that it has appellate jurisdiction, SFR's argument fails on the merits. As the district court held, both the terms of the Deed of Trust and Nevada law authorized the beneficiary to recover up to the full amount of unpaid balance on the Loan at foreclosure. Fannie Mae lawfully exercised this right. And although the district court did not reach the federal-law issues, HERA's preclusive effect on SFR's claim provides an alternative ground for affirmance.

**A.    Fannie Mae Was Entitled to Recover Up to the Full Amount of Unpaid Balance on the Loan at Foreclosure**

From the outset, this Court should recognize this case for what it is: an unfounded attempt to craft a mechanism by which SFR can force judicial re-examination of hundreds of foreclosures in the hopes that some will lead to a windfall for SFR.  But SFR's primary theory—that Fannie Mae was not entitled to recover the full amount of unpaid balance on the Loan at foreclosure—flies in the face of the terms of the Deed of Trust, the substance of the recorded documents, and bedrock property-law principles.  SFR's entire theory is premised on the assertion that, despite going through all the necessary steps to foreclose—including recording a notice of sale expressly stating that the basis for the foreclosure was to recover up to the full amount due on the loan—neither Fannie Mae nor Shellpoint accelerated the Loan.  But SFR offers no factual allegations to support this assertion.  The district court properly rejected this baseless theory, and this Court should affirm.

**1.    SFR's Argument Represents a Strategic Attempt to Launch Yet Another Wave of Litigation in Nevada**

For more than a decade, courts in Nevada have been flooded with cases—many of them brought by SFR—attempting to invalidate deeds of trust.  In the first wave of cases, this Court and the Nevada Supreme Court made clear that HERA preempts state law that would otherwise allow the extinguishment of an ownership

18

interest held by an entity under FHFA's conservatorship.[3]  As a result, the hopes of real-estate investors like SFR that purchased homes at HOA foreclosure sales for pennies on the dollar thinking they would obtain clear title were dashed.  Undeterred by this result—and incentivized to draw out the ultimate resolution of these cases in order to continue collecting market rents on properties purchased for below-market prices—investment entities like SFR then launched a second wave of cases.   In this second wave, the investors argued that Nevada's ancient-lien statute, NRS 106.240, somehow extinguished deeds of trust many years before their stated maturity dates. The Nevada Supreme Court has roundly rejected that theory.  *See, e.g.*, *LV Debt Collect, LLC v. Bank of N.Y. Mellon*, 534 P.3d 693 (Nev. 2023); *West Coast Servicing, Inc. v. Kassler*, 531 P.3d 81 (Nev. 2023) (unpublished); *Posner v. U.S. Bank, N.A.*, 545 P.3d 1150 (Nev. 2024).

Now, SFR unsuccessfully attempts to twist arguments that lenders made in the second wave into another weapon it and other investors can use to hinder lenders' ability to enforce their deeds of trust.  Indeed, SFR makes no effort to hide this fact: "The crux of SFR's claim for wrongful foreclosure/quiet title/declaratory judgment is based on case law and arguments made by Fannie Mae in other cases."  AOB at 23.  In the district court, SFR argued that in opposing SFR's latest theory, Fannie

---

[3]      *See, e.g., Berezovsky v. Moniz*, 869 F.3d 923 (9th Cir. 2017); *Saticoy Bay LLC Series 9641 Christine View v. Fed. Nat'l Mortgage Ass'n*, 417 P.3d 363 (Nev. 2018).

Mae committed an "about-face" by arguing that the Deed of Trust at issue allows Fannie Mae to accelerate the Loan prior to foreclosure. ER-033. Thus, as SFR admits, the premise underlying its claim is that Fannie Mae's arguments in the present action are inconsistent with its arguments in the second-wave actions.

But despite SFR's characterizations, Fannie Mae's argument in this case is completely consistent with its arguments in the second-wave cases. SFR suggests that because Fannie Mae argued that certain events do not make a loan "wholly due" for purposes of NRS 106.240, Fannie Mae cannot now argue that those events did not "accelerate" a loan for purposes of foreclosure. *See* ER-033. But SFR's argument is based on the conflation of two distinct concepts: the acceleration of a loan for purposes of foreclosure, as opposed to a loan becoming "wholly due" for purposes of NRS 106.240.

Indeed, the Nevada Supreme Court recently confirmed that these are distinct concepts. Specifically, in *Posner*, the court clarified that a judicial foreclosure complaint—which could be "construed as accelerating the [borrower's] loan—was "insufficient to trigger NRS 106.240's 10-year time frame." 545 P.3d 1150, 1153 (Nev. 2024). If acceleration alone were sufficient to make a loan "wholly due" under NRS 106.240, it would have been illogical for the court to conclude in *Posner* that something capable of accelerating a loan (judicial foreclosure) did not make the loan

wholly due.  Thus, the *Posner* court's reasoning leaves no doubt that these are distinct concepts.

At bottom, the self-identified "crux" of SFR's argument in this case is based on an alleged inconsistency that does not actually exist.  But if history is any guide, what SFR really seeks is a ruling that would open the gates to yet another wave of litigation involving hundreds of properties in Nevada.  The Court should decline SFR's invitation to open that floodgate and instead should simply apply straightforward law to the undisputed facts of this case.  As discussed below, doing so confirms that the district court properly dismissed SFR's claim.

> **2.** **The Terms of the Deed of Trust Allow for Acceleration and Foreclosure to Recover the Unpaid Balance of the Loan**

Even taking SFR's theory at face value, it fails because it is contrary to the terms of the Deed of Trust.  Indeed, the terms of the Deed of Trust contemplate the precise sequence of events that occurred here.  And under the Deed of Trust, acceleration is part and parcel of Fannie Mae's right to recoup the full amount owed on the Loan through foreclosure.

At the outset, when the Borrowers executed the Note and Deed of Trust, they incurred an obligation to repay the principal amount on the Loan plus interest.  The Deed of Trust defines the "Loan" as "the debt evidenced by the Note, plus any interest, any prepayment charges and late charges due under the Note, and all sums due under [the Deed of Trust], plus interest."  ER-077.  In turn, the "Note states that

21

the Borrower owes Lender two-hundred forty-six thousand nine hundred ninety and 00/100 Dollars (U.S. $246,990.00) plus interest." *Id.* And for the purposes of securing this obligation, the Deed of Trust provides that the "Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, [the Property]." ER-078. Thus, the Loan created an obligation on the Borrowers' part—secured by the Property—to repay the entire amount owed. Contrary to SFR's assertions, *see* AOB at 16-17, the fact that the Loan was designed to be an installment contract does not mean the Borrowers were not obligated to pay back the entire amount.

The Deed of Trust sets forth the lender's remedies in the event of the Borrowers' default. If the Borrowers fail to make a monthly installment payment, that default triggers the lender's ability to accelerate the Loan and invoke the power of sale to recover the full amount. *See* ER-088. And if the lender intends to invoke the power of sale after a default, it must record a notice of default that memorializes the "Lender's election to cause the Property to be sold" via foreclosure. *Id.* Here, the notice of default recorded in 2021 did just that. It informed the Borrowers that the lender intended to "declare all sums secured [by the Deed of Trust] immediately due and payable." ER-137.

Following the 2021 notice of default, the Notice of Sale was recorded in February 2022. ER-145. That Notice of Sale confirmed that the contemplated

22

foreclosure would enforce up to the full—i.e., accelerated—amount of the Loan.[4] Specifically, the Notice of Sale stated that "[t]he sale will be made … to pay the remaining principal sum of the note(s) secured by the Deed of Trust." ER-0146. And the amount provided in the Notice of Sale—$499,656.48—is far greater than the delinquency amount. Thus, by the time the Notice of Sale was recorded, it was clear that the Loan had been accelerated.

After receiving notice of intention to accelerate and election to move to foreclosure, the Borrowers retained the right to reinstate the Loan under certain conditions. ER-086. If the Borrowers chose to reinstate by paying the amount in default, the Deed of Trust and the "obligations secured [thereby] … [would have] remain[ed] fully effective as if no acceleration had occurred." *Id.* In other words, by paying the delinquent amount, the Borrowers could have effectively canceled the acceleration of the Loan and prevented foreclosure. The Borrowers retained the reinstatement right until five days before the foreclosure sale. *Id.* But if the Borrowers did not reinstate the Loan after default, the lender, "without further demand, [could] invoke the power of sale, including the right to accelerate full payment of the Note." ER-088.

---

[4] Of course, Fannie Mae's right to *seek* the full amount due on the Loan does not mean that Fannie Mae was somehow guaranteed to *recover* the full balance through the foreclosure sale. Rather, this right entitled Fannie Mae to all foreclosure-sale proceeds up to, but not more than, the full loan balance. Indeed, Fannie Mae often will accept or bid less than that amount for various reasons.

23

The events leading to foreclosure here follow the terms laid out in the Deed of Trust:

- The Borrowers defaulted and became delinquent as of September 1, 2009, thereby triggering the Lender's right to accelerate. ER-137.

- A notice of default and election to sell the Property was recorded on November 5, 2021. *Id.*

- The Borrowers failed to reinstate the Loan before the reinstatement option expired (i.e., five days before the foreclosure sale). ER-019.

- Fannie Mae foreclosed on the Property for an amount greater than the amount of the underlying default. ER-232.

This course of events is entirely consistent with Fannie Mae's rights under the Deed of Trust, and acceleration is a core component of those rights. SFR's theory that Fannie Mae somehow exercised these rights, including the power of sale, without accelerating the Loan cannot be squared with the terms of the Deed of Trust.

The course of events is also consistent with the terms of basic Nevada foreclosure law. Indeed, the very definition of "foreclosure sale" under Nevada law contemplates enforcement of the entire amount of an obligation: "'Foreclosure sale' means the sale of property to enforce an obligation secured by a mortgage or lien on the property, including the exercise of a trustee's power of sale pursuant to NRS 107.080." NRS 40.427. As discussed above, the Borrowers had an obligation to repay the entire amount of the Loan. Indeed, the Notice of Sale confirmed this obligation by stating that the purpose of the foreclosure sale would be to recover

24

$499,656—i.e., the full, accelerated amount of the Loan. As the district court correctly ruled, the "'obligation being enforced by the foreclosure sale'" here was the "full amount owed on the Loan." ER-010 (quoting NRS 40.427). SFR does not—and cannot—allege that the Borrowers were not obligated to pay back the entire amount of the Loan. Thus, the "obligation" here included the full amount of unpaid balance on the Loan at the time of foreclosure.

In its opening brief, SFR accuses the district court of ignoring the various contexts in which foreclosure may occur. Specifically, SFR argues the district court held "that by virtue of there being a foreclosure sale, the loan is automatically accelerated no matter the parties' contracted terms." AOB at 18. But contrary to SFR's characterizations, the district court's decision is rooted in the facts of this case. Indeed, the district court discussed in detail the contracted terms—i.e., the various provisions of the Note and Deed of Trust that authorize the Lender to enforce the entire amount of the obligation incurred by the Borrowers in the case of a default. *See* ER-010. And as discussed above, those terms provide for the course of events that unfolded and with which SFR takes issue here.

### 3. SFR Does Not Plausibly Allege that the Loan Was Not Accelerated at the Time of Foreclosure

SFR's theory rests on its assertion that despite the Deed of Trust authorizing Fannie Mae to recover the entire proceeds of the foreclosure sale up to the amount of the full debt, Fannie Mae somehow intended only to enforce the significantly

lower amount of the default giving rise to the foreclosure proceedings. But SFR offers no factual allegations to support this implausible assertion.

As an initial matter, SFR as the plaintiff carries the burden to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Thus, in order to survive dismissal here, SFR had to allege specific facts that plausibly suggest the Loan was never accelerated. But both in the district court and in its opening brief, SFR attempts to flip this burden and force Fannie Mae to identify a document that accelerated the Loan. *See* ER-033; AOB at 23. And while Fannie Mae has identified multiple instances at which the Loan could plausibly be considered accelerated—e.g., upon the recording of the Notice of Sale or five days before the sale occurred, *see* ER-019—Fannie Mae need not establish a precise moment at which the Loan became accelerated. Instead, it is SFR's burden to plausibly allege that such a moment never occurred. SFR has not done so.

In its opening brief, SFR argues that these recorded documents are somehow ambiguous as to whether Fannie Mae intended to enforce the entire amount owed on the Loan at foreclosure. *See* AOB at 19-20. Specifically, SFR argues that the Notice of Sale is not "so clear and unequivocal that it leaves no doubt as to the lender's intention." *Id.* at 20 (quoting *LV Debt Collect, LLC v. Bank of N.Y. Mellon*, 534 P.3d 693, 699 (Nev. 2023)). But nothing about the Notice of Sale's statement that "[t]he sale will be made … to pay the remaining principal sum of the note(s) secured by

the Deed of Trust" is ambiguous. ER-0146. Nor was the amount provided in the Notice of Sale ambiguous as to the amount being enforced by the foreclosure sale. It listed $499,656—an amount far greater than the delinquency amount—as the obligation sought to be enforced by foreclosure. SFR's self-serving allegation that there was some sort of uncertainty as to whether Fannie Mae sought to enforce up to the full amount owed on the Loan is belied by the record.

The district court correctly concluded that there was no uncertainty. Indeed, the district court found the Notice of Sale "indicat[ed] that the entire amount on the Loan was due." ER-011. SFR's only response to the district court's finding on this point is to say that "indicate is not the same as clear and unequivocal." AOB at 20. But SFR's semantic argument cannot overcome its failure to plausibly allege any facts giving rise to a reasonable inference that Fannie Mae did not intend to enforce the entire amount owed on the Loan.

In the amended complaint, SFR suggests the basis for its belief that the Loan was not accelerated lies in Shellpoint's NRS 107.200 *et seq.* response. Specifically, SFR alleged that, as part of Shellpoint's provision of payoff figures, "Shellpoint provided information about the loan which indicated it was still an installment loan." ER-220. In particular, SFR appears to be referencing the provision of the "amount necessary for the borrower to reinstate the loan obligation" as part of Shellpoint's NRS 107.200 *et seq.* response. ER-149. But nothing in Shellpoint's NRS 107.200

*et seq.* response suggests that the Loan was not accelerated or that Fannie Mae did not intend to enforce the entire amount of the debt at the upcoming foreclosure sale.

*First*, the inclusion of the reinstatement amount in the NRS 107.200 response was *required by law*. Specifically, the Nevada statute states that if the debt that is the subject of the NRS 107.200 *et seq.* request is in default, the payoff statement must include "the amount in default," as well as the unpaid interest and fees incurred as a result of the default. NRS 107.210(4). Thus, by including the amount in default—i.e., the amount needed to reinstate the Loan and restore its status as an installment Loan—Shellpoint was not indicating that the Loan was not accelerated; it was merely following the law.

*Second*, at the time Shellpoint sent the payoff statement to SFR, the Borrowers' reinstatement option had not yet expired. Shellpoint sent its response on June 24, 2022. ER-149. The Deed of Trust foreclosure occurred on July 29, 2022. ER-221. Thus, even treating as true SFR's allegation that the Loan was not accelerated when Shellpoint responded, that does not mean the Loan was never accelerated. Rather, the Loan could have been accelerated at any point leading up to the foreclosure sale over a month after Shellpoint sent the NRS 107.200 response. And within that period of time, the Borrowers' reinstatement right expired, thereby cementing the Borrowers' failure to cure the default and crystallizing Fannie Mae's ability to demand the full amount owed on the Loan (i.e., the payoff amount). SFR's

amended complaint ignores this period—including the extinguishment of the reinstatement right—and assumes that if the Loan was not accelerated by June 24, 2022, it was never accelerated. That assumption is unwarranted.

*Third*, nothing in NRS 107.200 requires the payoff statement to specify whether the Loan was accelerated. Nor does anything in any other provision of Nevada law or the Deed of Trust entitle SFR to notice of any acceleration. *See* ER-076–094; NRS 107.080, 107.200, and 107.210. While the Deed of Trust entitles the *Borrowers* to notice of any acceleration, *see* ER-088, that entitlement does not extend to SFR—a stranger to the Loan. Thus, the absence of any specific notice of acceleration directly addressed to SFR is not evidence that the Loan was not accelerated.

*Finally*, the NRS 107.200 and 107.210 statements on which SFR relies show that Fannie Mae sought to enforce the entire amount owed on the Loan. In addition to providing the reinstatement amount, Shellpoint also stated that the "amount necessary to pay off the loan and cause the deed of trust to be released is $495,698.11." ER-149–150. The statements incorporated by reference the payoff statement attached as Exhibit B, which states: "We will prepare the release of our interest in the property after all funds have cleared, " referring to the "total payoff" identified therein as $495,698.11. ER-156. Shellpoint made clear that Fannie Mae

29

was not interested in releasing the Deed of Trust for only the amount in default; it would do so only in exchange for the full amount owed on the Loan.

Thus, nothing about the NRS 107.200 and 107.210 statements—which form the sole basis of SFR's alleged belief that the Loan was not accelerated, *see* ER-220—suggests that the Loan was not accelerated or that Fannie Mae did not intend to enforce the full amount of unpaid balance on the Loan. And because this payoff statement is the only factual basis for SFR's implausible claim that Fannie Mae never accelerated the Loan, the district court properly dismissed the claim.

In contrast, the actual evidence in recorded documents shows that Fannie Mae intended to enforce the full amount of the debt at foreclosure. As discussed above, *supra* II.A.2, the 2021 notice of default stated that the beneficiary intended to "declare all sums secured [by the Deed of Trust] immediately due and payable."[5] ER-137. And the Notice of Sale states that "[t]he sale will be made … to pay the

---

[5]    SFR argues that the notice of default is somehow deficient because it allegedly does not contain the four pieces of information listed in Paragraph 22 of the Deed of Trust. *See* AOB at 19. But this is a distraction that does not support its claim. As an initial matter, SFR is a stranger to the Deed of Trust and is therefore not entitled to any notice under Paragraph 22; that entitlement belongs to the Borrowers. In any event, Paragraph 22 does not require that this information—which includes specifying the default, the action required to cure the default, a date by which the default must be cured, and notice that failure to cure may result in acceleration—be included in the recorded notice of default itself. *See* ER088. As a result, omitting that information in the notice of default does not mean it was never provided. In any event, nothing in Nevada law or the Deed of Trust suggests that a document cannot provide notice of the lender's intent to accelerate without providing the four pieces of information identified in Paragraph 22.

remaining principal sum of the note(s) secured by the Deed of Trust"—i.e., $499,656.48. ER-146. This amount is far more than the delinquency amount at the time: $300,341.80. ER-149. Thus, the recorded documents show that Fannie Mae sought to enforce the entire amount owed on the Loan at the foreclosure sale.

SFR's unsupported theory is implausible on its face. The facts of this case only confirm that it lacks any merit. Accordingly, if this Court reaches the merits, it should affirm the district court's dismissal of SFR's baseless claim.

### 4. No Nevada Law Supports SFR's Claim

In addition to failing to allege specific facts that support SFR's claim, SFR also fails to identify any Nevada law suggesting SFR is entitled to its requested relief. That is because there is none.

Nevada's non-judicial foreclosure statutes—NRS 107.080 *et seq.*—offer no support for SFR's requested relief. These provisions provide several bases that can render a foreclosure sale void:

- *First*, where there was a lack of default, *see* NRS 107.080(2)(a)(2);

- *Second*, where the foreclosing party failed to provide timely notice of breach and an election to sell, *see* NRS 107.080(2)(b)-(d); NRS 107.087;

- *Third*, where the notice of default fails to describe the deficiency in performance, *see* NRS 107.087; or

- *Fourth*, where the foreclosing party fails to record a notice of sale, *see* NRS 107.080(4).

31

If any of these conditions are met, "a sale made pursuant to this section must be declared void."  NRS 107.080(5).

SFR does not—and cannot—allege that any of these deficiencies were present here.  And nothing in NRS 107.080 *et seq.* provides that a creditor's bid higher than the amount of the default giving rise to a foreclosure sale is a sufficient procedural basis to void a sale or otherwise entitle another person to ownership of the property for the amount of the underlying delinquency.  Thus, SFR has no statutory basis for voiding the foreclosure sale based on the facts alleged.

"[T]he 'doctrine of expressio unius est exclusio alterius as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'" *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018) (citation omitted).  In applying that maxim here, SFR's wrongful-foreclosure claim fails as a matter of law because it does not allege any of the statutorily prescribed procedural deficiencies that could state a wrongful-foreclosure claim under NRS 107.080 or NRS 107.0805.

In both its amended complaint, ER-223, and its opening brief, AOB at 24-25, SFR cites NRS 40.462 as support for its claim.  But this statute offers no support for SFR's argument.  NRS 40.462 addresses the distribution of proceeds from a foreclosure sale.  It references neither credit bidding nor voiding a completed

foreclosure sale. And at any rate, the foreclosure here complied with NRS 40.462. Had a third party purchased the Property, Fannie Mae would have been entitled to retain the amount necessary to "satisf[y] … the obligation being enforced by the foreclosure sale[.]" NRS 40.462(2)(b). But because Fannie Mae successfully credit bid for less than the total amount owed on the Loan, the sale did not generate any excess proceeds to be distributed. As a result, NRS 40.462 offers no support for SFR's claim.

Nor does the fact that the Legislature defined "indebtedness" as the entire unpaid balance of a loan plus interest and fees support SFR's argument. SFR argues that because "the Legislature used a different term"—i.e., indebtedness—"to define the full debt within Chapter 40, it stands to reason that 'obligation' does not mean the full debt or payoff." AOB at 16. Based on this single statutory definition, SFR argues that the term "obligation" can *never* mean the full unpaid amount of a loan.

Both common sense and Nevada law undermine this strained statutory argument. What constitutes an "obligation" in a given situation depends on the context. Indeed, Black's Law Dictionary notes that the term "obligation" is a "generic word … having many, wide, and varied meanings, according to the context in which it is used." *Black's Law Dictionary*, 1074 (6th ed. 1990). SFR points to no authority to suggest that the term "indebtedness" and "obligation" are mutually exclusive.

33

Further, Nevada's non-judicial foreclosure statute—NRS 107.080—contemplates that an "obligation" can encompass the entire unpaid amount on a mortgage loan. The statute authorizes lenders to sell a "property to satisfy the obligation" secured by the deed of trust. NRS 107.080(2)(b). If SFR were correct that "obligation" can *never* mean the total unpaid balance that is owed on a mortgage loan, then lenders would be unable recover the full amount on their loans when borrowers default. Such an argument is contrary to common sense and lacks any support in Nevada law.

Without any Nevada law to support its claims, SFR grasps hold of two out-of-jurisdiction cases. *See* AOB at 15, 21-23. But neither of these Arizona cases supports SFR's theory. In fact, they both undermine it. Thus, even if these out-of-state authorities were relevant to SFR's Nevada-law claim, its argument would still be without support.

SFR offers *Bridges v. Nationstar*, 253 Ariz. 532 (2022), and *Brosnahan v. Caliber Home Loans, Inc.*, 2023 WL 4743253 (Ariz. Ct. App. July 25, 2023), to argue that a notice of sale is not an affirmative act providing sufficiently clear notice of acceleration. *See* AOB at 21. As an initial matter, SFR relies on the court's statement in *Bridges* that to accelerate a loan, the lender "must take some affirmative act to make clear *to the debtor* it has accelerated the obligation." AOB at 15 (quoting *Bridges*, 253 Ariz. at 536). But here, SFR is not the debtor. And as discussed above,

the Deed of Trust entitles the *Borrowers* to notice of acceleration—not SFR. *See* ER-088. Thus, to the extent SFR argues that *Bridges* requires an affirmative act making it clear to *SFR* that the Loan is accelerated, SFR is mistaken.

In any event, both *Bridges* and *Brosnahan* held that the loans at issue were not accelerated at the time of the notices of sale *because the borrower could still reinstate the loan*. *See Bridges*, 253 Ariz. at 535 ("[T]he entire debt is not accelerated because under the plain language of the statute a debtor can cure the default and reinstate the contract by paying only the 'amount then due' before the trustee's sale is held."); *Brosnahan*, 2023 WL 4743253, at *4 ("Because this provision grants the borrower this right of reinstatement, a notice of trustee's sale alone is not sufficient to accelerate the debt."). Thus, in both *Bridges* and *Brosnahan*, the ability of the borrower to reinstate the loan was dispositive of whether the loan was accelerated. It stands to reason that if the borrowers in those cases did *not* retain the right to reinstate their loans, then the loans would have been considered accelerated. Conversely, in the present case, the Borrowers' reinstatement right expired on July 24, 2022—i.e., five days before the foreclosure sale. *See* ER-086. SFR does not argue otherwise. Thus, under the reasoning of

*Bridges* and *Brosnahan*, SFR has no argument that the Loan was not accelerated by that point.[6]

*Bridges* and *Brosnahan* also do not support SFR's argument because both cases arose in an entirely different context. Specifically, the issue in both cases was whether the statute of limitations had run, thereby precluding any *future* enforcement of the loans. *See Bridges*, 523 Ariz. at 533; *Brosnahan*, 2023 WL 4743253, at *2. Neither case involved a completed foreclosure sale. Notably, SFR cites no case involving a completed foreclosure sale that was unwound or declared wrongful because the loan at issue was not accelerated. *See generally*, AOB.

SFR identifies no law—Nevada or otherwise—that supports its wrongful-foreclosure theory. There is none. The district court properly rejected this unsupported theory, and this Court should affirm.

### 5. Sound Policy and Common Sense Refute SFR's Theory

SFR's claim that it is entitled to the Property in exchange for only the amount of the default contravenes the basic tenets of housing-finance policy and common

---

[6]     SFR also states that the Nevada Supreme Court's decision in *LV Debt Collect LLC v. Bank of N.Y. Mellon*, 534 P.3d 693 (Nev. 2023), "cuts against a notice of sale qualifying as a document that can accelerate a loan" because *LV Debt* notes that acceleration must be "clear and unequivocal." AOB at 20. But SFR then fails to provide any explanation or identify any component of the Notice of Sale suggesting it is not "clear and unequivocal." That is because the Notice of Sale does not equivocate: It clearly states that the entire amount of the Loan will be enforced at the foreclosure sale.

sense. Indeed, mortgage lending depends on the lender's ability to recover on defaulted obligations by enforcing the obligations secured by a deed of trust. *See* Restatement (Third) of Property (Mortgages) § 1.1 (1997) ("A mortgage is a conveyance of an interest in real property as security for performance of an obligation."). And the Nevada legislature expressly stated that its judicial foreclosure laws "must be construed to permit a secured creditor to realize upon the collateral for a debt or other obligation agreed upon by the debtor when the debt or other obligation was incurred." NRS 40.430(2). SFR's attempt to prevent Fannie Mae from realizing on the secured collateral undermines the entire idea of mortgage lending.

SFR's argument that it is entitled to the Property free and clear of the Deed of Trust for only the reinstatement amount also offends common sense. The reinstatement option is not a mechanism to extinguish the Deed of Trust. Rather, it merely returns the Loan to performing status and prevents foreclosure. If the Borrowers wished to obtain a release of the Deed of Trust, they needed to satisfy the *entire* obligation secured by the Deed of Trust. *See* ER-088 ("Upon payment of *all sums* secured by [the Deed of Trust], Lender shall request Trustee to reconvey the Property.") (emphasis added). Had SFR paid the default amount consistent with Nevada law before the Notice of Sale was recorded, it could have avoided foreclosure. *See* NRS 107.080(2)-(3) (stating that a titleholder, among others, may,

"for a period of 35 days" after a notice of default is recorded, "make good on the deficiency in performance or payment," at which point the underlying default is cured and the beneficiary cannot exercise the power of sale). No one—including SFR—had a right to *extinguish* the Deed of Trust by paying only the default amount.

Accepting SFR's theory would cause profound reverberations in the housing-finance industry. Mortgage lenders would suddenly be at risk of losing the ability to realize full value of their secured properties, deterring them from issuing new loans and increasing the price of home-financing for consumers. The Court should reject SFR's attempt to upend the housing-finance market simply for its own benefit.

In the opening brief, SFR suggests that accepting Fannie Mae's arguments would spur a new wave of litigation involving Nevada's ancient-lien statute, NRS 106.240. Specifically, SFR argues that in the district court, "Fannie Mae seemed to intimate … that five days before the scheduled sale date" is when the loan should be deemed accelerated, and that a holding adopting this argument would "open[] the door to re-arguing countless cases where NRS 106.240 was alleged because notice of sale are never cancelled or rescinded." AOB at 24.

SFR's warning is unfounded. Indeed, it relies on SFR's fundamental misunderstanding of law described above—namely, the conflation of a loan being "accelerated" for purposes of foreclosure with a loan being "wholly due" for purposes of NRS 106.240. And as noted above, the Nevada Supreme Court has

38

recently clarified that these concepts are distinct, holding that something that could accelerate a loan does not make it "wholly due." *See Posner*, 545 P.3d at 1153. Thus, contrary to SFR's suggestion, a ruling in this case regarding acceleration for purposes of foreclosure will not support a new wave of litigation under NRS 106.240.

## B.   A Ruling in SFR's Favor Would Contravene Federal Law and Violate the Supremacy Clause

Even if Nevada state law allowed for SFR's wrongful-foreclosure claim—it does not—its application here would contravene federal law and violate the Supremacy Clause.   Until the July 2022 foreclosure sale, the Property was encumbered by a Deed of Trust owned by Fannie Mae.   And as discussed above, Fannie Mae is a federally chartered corporation that has been under FHFA's conservatorship since 2008.

The district court properly dismissed SFR's claim on state-law grounds.   But three provisions of FHFA's organic statute—12 U.S.C. §§ 4617(f), 4617(j)(3), and 4617(a)(7)—bar SFR's requested relief.   Fannie Mae raised these provisions below, ER-069–72, and they provide an alternative basis to affirm the district court's ruling.

### 1.   Section 4617(f) Precludes the Court from Granting the Relief SFR Seeks

Section 4617(f) provides that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator or receiver."

12 U.S.C. § 4617(f); *see, e.g.*, *Collins v. Yellen*, 141 S. Ct. 1761, 1770 (2021) (holding that "shareholders' statutory claim is barred by "[§ 4617(f )]"). It "bars 'any' judicial interference with the 'exercise of *powers or functions* of [FHFA] *as a conservator or a receiver*." *Roberts v. Fed. Hous. Fin. Agency*, 889 F.3d 397, 402 (7th Cir. 2018) (quoting 12 U.S.C. § 4617(f)) (emphasis in original). "This shelter [from judicial interference] is sweeping[.]" *Id.* "The plain statutory text draws a sharp line in the sand against litigative interference—through judicial injunctions, declaratory judgments, or other equitable relief—with FHFA's statutorily permitted actions as conservator or receiver." *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 606 (D.C. Cir. 2017). Thus, "[a]t the same time [that] HERA broadly empowers [FHFA], it disempowers courts[.]" *Roberts*, 889 F.3d at 400.

Here, applying Nevada law to declare SFR the winning bidder at an amount less than the payoff amount or to void the foreclosure would "restrain or affect the exercise of the powers or functions of [FHFA] as a conservator." 12 U.S.C. § 4617(f). Specifically, it would have the effect of negating FHFA's statutory powers to "collect all obligations and money due" the Enterprises, and to "preserve and conserve [their] assets and property." *See id.* at § 4617(b)(2)(B)(ii), (iv). This conclusion is inescapable, as voiding the foreclosure sale or judicially compelling Fannie Mae to transfer title to SFR at an amount less than Fannie Mae was

40

contractually entitled to receive would necessarily interfere with FHFA's statutory powers to collect all obligations and money due.

Courts routinely hold that the power to collect obligations, including in the foreclosure context, is a core power that Section 4617(f) protects. *See, e.g.*, *Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707, 715 (8th Cir. 1996); *Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995); *Tillman v. RTC*, 37 F.3d 1032, 1036 (4th Cir. 1994); *Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 705-06 (1st Cir. 1992).[7] Unwinding the foreclosure or otherwise extinguishing the Deed of Trust for less than what Fannie Mae was owed under the Loan would clearly restrain or affect FHFA's statutory powers and functions; Section 4617(f) therefore precludes it.

### 2. Section 4617(j)(3) Bars the Relief SFR Seeks

Section 4617(j)(3) provides that "[n]o property of [an FHFA conservatorship] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [Conservator], nor shall any involuntary lien attach to the property of [FHFA]." 12 U.S.C. § 4617(j)(3). An order forcing Fannie Mae to unwind the

---

[7] Courts applying Section 4617(f) routinely look to FDIC cases interpreting Section 1821(j), on which Section 4617(f) is patterned, for guidance. *See, e.g.*, *Roberts*, 889 F.3d at 402-03; *Jacobs v. Fed. Hous. Fin. Agency*, 908 F.3d 884, 895 (3d Cir. 2018); *Perry Cap.*, 864 F.3d at 605-06. Courts also do the same for other provisions of HERA. *See, e.g.*, *Skylights LLC v. Byron*, 112 F. Supp. 3d 1145, 1152 (D. Nev. 2015).

foreclosure sale and transfer the Property to SFR for only the amount in default would contravene this protection afforded by federal law.

The protection afforded by Section 4617(j)(3) extends to lien interests. *See Skylights LLC*, 112 F. Supp. 3d at 1155. Indeed, as this Court has held, the protection "applies *to any property* for which the Agency serves as conservator." *Berezovsky*, 869 F.3d at 928 (emphasis added). And FHFA need not take any action to effectuate Section 4617(j)(3)'s protection as to any particular property. *Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1149 (9th Cir. 2018). Rather, "the statutory language cloaks [conservatorship] property with Congressional protection unless or until the Agency affirmatively relinquishes it." *Berezovsky*, 869 F.3d at 929 (stating that Section 4617(j)(3) "does not require the Agency to actively resist").

Section 4617(j)(3) bars the relief SFR seeks—an order to effectively reduce the amount secured by Fannie Mae's Deed of Trust and to sell the Property SFR at this reduced amount—which would forever take away property from FHFA without its affirmative consent. Any version of SFR's requested relief would unquestionably deprive the Conservator and Fannie Mae of Congressionally-protected property— their lien interest in the Property before the 2022 sale or the ownership interest Fannie Mae acquired at the 2022 sale. *See Bank of Am., N.A. v. Santa Barbara Homeowners Ass'n*, 19-16922, 2022 WL 17076048, at *1 (9th Cir. Nov. 18, 2022)

42

(affirming district court's holding that "12 U.S.C. § 4617(j)(3) precludes extinguishment of lien interests … without the consent of the Federal Housing Finance Agency").

### 3. Section 4617(a)(7) Bars the Relief SFR Seeks

Under HERA, Congress has granted FHFA as Conservator special powers and protections that supersede conflicting state laws and state actions. Congress has made clear that FHFA maintains exclusive authority over conservatorship assets, and that other government entities may not interfere. Specifically, Section 4617(a)(7) provides that "[w]hen acting as conservator or receiver, the Agency shall not be subject to the direction or supervision of … any State in the exercise of the rights, powers, and privileges of the Agency." 12 U.S.C. § 4617(a)(7).

Like Section 4617(f), Section 4617(a)(7) "limits external interference with FHFA's actions as conservator." *Roberts*, 243 F. Supp. 3d at 955. As one court explained, this provision "specifically functions to remove obstacles to FHFA's exercise of conservator powers—i.e., to preserve FHFA's interests." *Saxton v. Fed. Hous. Fin. Agency*, 245 F. Supp. 3d 1063, 1077 (N.D. Iowa 2017), *aff'd*, 901 F.3d 954 (8th Cir. 2018); *see also Fed. Hous. Fin. Agency v. City of Chicago*, 962 F. Supp. 2d 1044, 1060-61 (N.D. Ill. 2013). For that reason, Section 4617(a)(7) precludes the relief SFR seeks under its wrongful foreclosure claim.

## <u>CONCLUSION</u>

The district court properly rejected SFR's meritless wrongful foreclosure theory. This Court should affirm the judgment of the district court.

DATED this 26th day of September, 2024.

AKERMAN LLP

*/s/ Paige L. Magaster*
ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
NATALIE L. WINSLOW, ESQ.
Nevada Bar No. 12125
PAIGE L. MAGASTER, ESQ.
Nevada Bar No. 15557
1635 Village Center Circle, Suite 200
Las Vegas, NV 89134

*Attorneys for Federal National Mortgage Association and NewRez LLC dba Shellpoint Mortgage Servicing*

## ADDENDUM

**12 U.S.C. § 4617(a)(7): Agency not subject to any other Federal agency**

When acting as conservator or receiver, the Agency shall not be subject to the direction or supervision of any other agency of the United States or any State in the exercise of the rights, powers, and privileges of the Agency.

**12 U.S.C. § 4617(f): Limitation on court action**

Except as provided in this section or at the request of the Director, no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver.

**12 U.S.C. § 4617(j)(3): Property protection**

No property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency

## CERTIFICATE OF COMPLIANCE

I certify this brief complies with the type-volume limitations as set forth in Rule 32-1 of the Ninth Circuit Rules. The brief has been prepared using Times New Roman, 14-point font, and contains 11,179 words proportionally spaced.

DATED September 26, 2024.

**AKERMAN LLP**

*/s/ Paige L. Magaster*
ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
NATALIE L. WINSLOW, ESQ.
Nevada Bar No. 12125
PAIGE L. MAGASTER, ESQ.
Nevada Bar No. 155571635 Village Center Circle, Suite 200
Las Vegas, NV 89134

*Attorneys for Federal National Mortgage Association and NewRez LLC dba Shellpoint Mortgage Servicing*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 26th day of September 2024, I caused to be served a true and correct copy of the foregoing **APPELLEE'S ANSWERING BRIEF**, via the electronic filing system to the following:

|  |  |
|---|---|
| Karen L. Hanks, Esq. | karen@hankslg.com |
| Chantel M. Schimming, Esq. | chantel@hankslg.com |

I declare that I am employed in the office of a member of the bar of this Court at whose discretion the service was made.

 _/s/ Patricia Larsen_____
An employee of AKERMAN LLP

47