No. 24-488

---

# United States Court of Appeals
# For the Ninth Circuit

---

**SFR INVESTMENTS POOL 1, LLC,**
*Plaintiff-Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION,**
*Defendant-Appellee.*

---

On Appeal from the United States District Court for the District of Nevada
Before the Honorable Gloria M. Navarro, Case No. 2:22-cv-01942-GMN-MDC

---

**BRIEF OF AMICI CURIAE FEDERAL HOUSING FINANCE AGENCY AND FEDERAL HOME LOAN MORTGAGE CORPORATION IN SUPPORT OF APPELLEE AND AFFIRMANCE OF THE DISTRICT COURT'S JUDGMENT**

---

Michael A.F. Johnson
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Tel: (202) 942-5783
Fax: (202) 942-5999
michael.johnson@arnoldporter.com

*Counsel for Amici Curiae Federal Housing Finance Agency
and Federal Home Loan Mortgage Corporation*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

1. Amicus curiae Federal Housing Finance Agency ("FHFA" or "Conservator") is an independent agency of the federal government of the United States and therefore is not required to provide a corporate disclosure statement under Fed. R. App. P. 26.1.

2. Amicus curiae Federal Home Loan Mortgage Corporation ("Freddie Mac") is presently under the conservatorship of FHFA. Freddie Mac does not have a parent corporation, and according to SEC filings, no publicly held corporation holds more than 10% of Freddie Mac's common (voting) stock.

## **<u>TABLE OF CONTENTS</u>**

CORPORATE DISCLOSURE STATEMENT ......................................... i

TABLE OF CONTENTS ................................................................. ii

TABLE OF AUTHORITIES ........................................................... iii

STATEMENT OF INTEREST OF AMICI CURAIE ............................. 1

INTRODUCTION ........................................................................ 4

ARGUMENT ............................................................................. 6

    I.     HERA Prevents SFR's Requested Relief............................. 6

          A.    Section 4617(f) Bars the Relief SFR Seeks ............................ 7

          B.    Section 4617(j)(3) Broadly Protects Fannie Mae's Deeds of Trust .............12

          C.    Section 4617(a)(7) Bars SFR's Requested Relief ...................15

    II.     Sound Policy Supports HERA's Application Here............................16

CONCLUSION ..........................................................................21

CERTIFICATE OF COMPLIANCE..................................................... i

CERTIFICATE OF SERVICE ......................................................... ii

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

<u>**Cases**</u>

*218-300 Joint Venture v. Onion*,
    938 F.2d 35 (5th Cir. 1991) ...............................................................20

*Am. Bankers Mortg. Corp. v. Freddie Mac*,
    75 F.3d 1401 (9th Cir. 1996) ..............................................................3

*Bank of Am., N.A. v. Colonial Bank*,
    604 F.3d 1239 (11th Cir. 2010) ........................................................20

*Beal Bank, SSB v. Nassau Cty.*,
    973 F. Supp. 130 (E.D.N.Y. 1997) ...................................................17

*Berezovsky v. Moniz*,
    869 F.3d 923 (9th Cir. 2017) ....................................................12, 14

*C.G.B. v. Wolf*,
    464 F. Supp. 3d 174 (D.D.C. 2020)....................................................8

*Cambridge Cap. Corp. v. Halcon Enters., Inc.*,
    842 F. Supp. 499 (S.D. Fla. 1993) ....................................................12

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021)............................................................7, 8, 18

*Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*,
    893 F.3d 1136 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1618 (2019) ...............15

*Freeman v. FDIC*,
    56 F.3d 1394 (D.C. Cir. 1995)....................................................10, 11

*Harris v. Garner*,
    216 F.3d 970 (11th Cir. 2000) ............................................................8

*Jacobs v. Fed. Hous. Fin. Agency*,
    908 F.3d 884 (3d Cir. 2018) .............................................................10

*Perry Cap. LLC v. Mnuchin*,
    864 F.3d 591 (D.C. Cir. 2017)....................................................4, 8, 10

*Planned Parenthood Ariz. Inc. v. Betlach*,
   727 F.3d 960 (9th Cir. 2013) ...................................................................8

*Roberts v. Fed. Hous. Fin. Agency*,
   889 F.3d 397 (7th Cir. 2018) .................................................................10

*S/N-1 REO Ltd. Liab. Co. v. City of Fall River*,
   81 F. Supp. 2d 142 (D. Mass. 1999).....................................................13

*Sierra Club, Lone Star Chapter v. F.D.I.C.*,
   992 F.2d 545 (5th Cir. 1993) .................................................................19

*Simon v. Cebrick*,
   53 F.3d 17 (3d Cir. 1995) ......................................................................12

*Skylights LLC v. Byron*,
   112 F. Supp. 3d 1145 (D. Nev. 2015).....................................................12

*Trembling Prairie Land Co. v. Verspoor*,
   145 F.3d 686 (5th Cir. 1998) ...........................................................12, 13

*Tri-State Hotels, Inc. v. FDIC*,
   79 F.3d 707 (8th Cir. 1996) ............................................................10, 11

*United States v. Gonzales*,
   520 U.S. 1 (1997)....................................................................................7

**Constitutional Provisions**

U.S. Const., art. VI, cl. 2 ...........................................................................6

**Statutes**

12 U.S.C.
   § 1451.......................................................................................................3
   § 1716.......................................................................................................3
   § 1821(j).............................................................................9, 10, 11, 19
   § 1825(b)(2) ....................................................................................11, 12
   §§ 4511 *et seq.* ......................................................................................2
   § 4617(a)(7) .......................................................................................2, 15
   § 4617(b)(2)(A)(i).....................................................................................2
   § 4617(b)(2)(B)(ii)...........................................................................8, 9, 16
   § 4617(b)(2)(B)(iv)........................................................................2, 8, 16

§ 4617(b)(2)(D)..............................................................................17

§ 4617(b)(11)(E)...............................................................................8

§ 4617(f).................................................................................*passim*

§ 4617(j)(3)............................................................................*passim*

NRS 106.240......................................................................................5

Pub. L. No. 110-289, 122 Stat. 2654 (codified at 12 U.S.C. §§ 4511 *et seq.*)..............................................................................................2

## **Other Authorities**

Fed. R. App. P. 26.1(a) ......................................................................1

Fed. R. App. P. 29(a)(2)......................................................................1

Fed. R. App. P. 29(a)(4)(E)................................................................1

FHFA, Conservatorship, http://www.fhfa.gov/Conservatorship............................16

## STATEMENT OF INTEREST OF AMICI CURAIE

FHFA and Freddie Mac have an interest in this case because the outcome could affect many thousands of residential mortgage loans in Nevada that are part of the conservatorship estates of Appellee Federal National Mortgage Association ("Fannie Mae") and amicus Freddie Mac (together, the "Enterprises") and that affect the safety and soundness of those entities, which FHFA regulates.[1]

The Enterprises are federally chartered entities Congress created with important public missions to support the Nation's housing-finance market by providing stability in the secondary mortgage market, all of which allows for affordable home ownership for Americans. The Enterprises own millions of mortgages nationwide, including over one-hundred thousand in Nevada. In 2008, Congress enacted the Housing and Economic Recovery Act ("HERA"), which established FHFA as an independent agency of the federal government and the

---

[1]     As an independent agency of the United States government, FHFA is permitted to file this amicus brief "without consent of the parties or leave of court," Fed. R. App. P. 29(a)(2), and without a disclosure statement, Fed. R. App. P. 26.1(a). Freddie Mac received written consent to join FHFA's amicus brief from Appellees' counsel on October 3, 2024. However, SFR stated that it did not consent. Freddie Mac therefore concurrently filed a motion for leave to join this brief.

Under Fed. R. App. P. 29(a)(4)(E), Amici state that no party or party's counsel authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting this brief, and no person other than FHFA, Fannie Mae, and Freddie Mac; their members; or their counsel contributed money that was intended to fund preparing or submitting this brief.

1

regulator of the Enterprises, among other entities. *See* Pub. L. No. 110-289, 122 Stat. 2654 (codified at 12 U.S.C. §§ 4511 *et seq.*). HERA granted FHFA's Director the power to place the Enterprises into conservatorship or receivership under statutorily defined circumstances, mandating that as Conservator, FHFA succeeds to "all rights, titles, powers, and privileges" of an entity in conservatorship with respect to its assets. 12 U.S.C. § 4617(b)(2)(A)(i). On September 6, 2008, FHFA's then-Director placed the Enterprises into FHFA's conservatorship, where they remain today.

As Conservator, FHFA holds federal statutory powers and prerogatives that are relevant to this action. Of particular relevance are three provisions of FHFA's organic statute—12 U.S.C. §§ 4617(f), 4617(j)(3), and 4617(a)(7)—that preempt application of any provision of Nevada law that Plaintiff-Appellant SFR Investments Pool 1, LLC ("SFR") relies on to undo a properly conducted deed-of-trust foreclosure sale on a Loan owned by Fannie Mae and thereby grant SFR a financial windfall.

FHFA, as the Enterprises' Conservator, is statutorily empowered to "preserve and conserve" the Enterprises' assets and therefore has a direct interest in the outcome of this case. 12 U.S.C. § 4617(b)(2)(B)(iv). When FHFA acts in its capacity as Conservator, its actions are deemed non-governmental for many substantive purposes. While this brief addresses FHFA's statutory powers as

2

Conservator, FHFA submits this brief exclusively in its capacity as an agency of the United States interpreting Conservator powers under HERA to implement Congress's legislative mandate. In that capacity, FHFA has an interest in this case because if this Court were to reverse the district court's dismissal, that decision would significantly hinder the Enterprises' abilities to fulfill their critically important statutory missions and could hamper FHFA in effectuating its powers to ensure that the Enterprises are effectively supporting the secondary mortgage market to provide liquidity, stability, and affordability to the U.S. residential mortgage market while operating safely and soundly.

Freddie Mac likewise has a compelling interest in ensuring that it is able to enforce its security interests. Congress chartered the Enterprises to provide stability, liquidity, and affordability to the residential mortgage market. *See* 12 U.S.C. § 1716; 12 U.S.C. § 1451. The Enterprises serve an important federal objective: "to maintain the secondary mortgage market and assist in meeting low- and moderate-income housing goals." *Am. Bankers Mortg. Corp. v. Freddie Mac*, 75 F.3d 1401, 1407 (9th Cir. 1996) (citation omitted). The Enterprises fulfill their public mission by purchasing residential mortgage loans from lenders, pooling those loans into mortgage-backed securities, and selling those securities to investors. In doing so, the Enterprises support a vital secondary market for residential mortgages, provide stability in that market, and promote access to mortgage credit on a nationwide basis.

3

*See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 598 (D.C. Cir. 2017). The Enterprises play a critical role in Nevada's housing market by facilitating mortgage financing to Nevada homeowners. Nationally, the Enterprises have acquired more than 30 million residential loans.

The Enterprises' ability to fulfill their public mission depends on their ability to rely on and enforce their valid security instruments. Freddie Mac is uniquely qualified to aid this Court's consideration of this action. As the holder of a significant number of residential mortgage loans in Nevada, Freddie Mac is well qualified to address the disruptions and policy implications involving the secondary mortgage market that will result from the unwinding of properly conducted foreclosure sales and the extinguishment or retroactive impairment of Enterprise-owned deeds of trust.

## **INTRODUCTION**

For more than a decade, the Enterprises and their contractually authorized loan servicers have litigated several hundred cases in Nevada involving the ongoing validity of the Enterprises' deeds of trust. The first wave of cases focused on whether 12 U.S.C. § 4617(j)(3)—often referred to as the "Federal Foreclosure Bar," which applies while the Enterprises operate under federal conservatorship—protects Enterprise-owned deeds of trust from extinguishment by homeowners' association

4

("HOA") foreclosure sales.  This Court and the Nevada Supreme Court repeatedly confirmed that it does.

After that initial wave concluded, real-estate investors like SFR launched a second wave of attacks on Enterprise deeds of trust.  In it, non-borrower titleholders have sought to extinguish the same Enterprise-owned deeds of trust that were upheld in the first wave of challenges.  These cases center on the proper interpretation of Nevada's ancient-lien statute, NRS 106.240—specifically, what renders a loan "wholly due" for purposes of the statute, thereby triggering the ten-year time-period after which the deed of trust will be conclusively deemed satisfied and extinguished.

The present case was left behind as a sort of flotsam—barely recognizable wreckage of a theory that foundered as the second wave passed.  More specifically, SFR clings to the barely bouyant argument that in fighting off a flotilla of ancient-lien claims, lenders and loan-servicers inadvertently surrendered their right to recover by foreclosure the full amounts due on their loans.

SFR does not hide its motivations; it plainly states that it bases its arguments in this case on the arguments of lenders in ancient-lien actions.  Dkt. No. 14.1 at 23.  SFR's transparent goal is to open yet another wave of meritless property litigation in Nevada.  But this attempt fails.  SFR's far-fetched theory finds no support in Nevada law, and its implausible conclusion is that lenders like Fannie Mae are limited to collecting only the amount in default—as opposed to the full debt owed

on the mortgage loan—at foreclosure. The district court properly rejected this theory, and this Court should affirm.

Though the district court properly analyzed Nevada law—FHFA and Freddie Mac support and endorse Fannie Mae's Nevada-law argumnets—that is not the only ground that compels affirmance. FHFA and Freddie Mac write separately to emphasize the unequivocial and superseding federal-law protections that HERA provides the Conservator's property interests, including the Deed of Trust at issue here. These HERA protections independently support affirmance.

## **ARGUMENT**

## I.    **HERA Prevents SFR's Requested Relief**

Under the Supremacy Clause, HERA—as controlling federal law—preempts SFR's attempt to utilize Nevada law to unwind the completed foreclosure herein and retroactively reduce the value of Fannie Mae's federally protected property interest that is part of its conservatorship estate. U.S. Const., art. VI, cl. 2. In HERA, Congress provided FHFA, as Fannie Mae's Conservator, a broad array of rights and powers to protect the Enterprises' property interests against any state-law based deprivation, impairment, or diminution. If SFR's claim were allowed to proceed, it would contravene both the language and the intent of HERA and would undermine FHFA's Congressional mandate as conservator.

### A.      Section 4617(f) Bars the Relief SFR Seeks

Section 4617(f) of HERA unequivocally prohibits the relief SFR requests. Section 4617(f) provides that "no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver." *See* 12 U.S.C. § 4617(f).  Although SFR was not obligated under the Loan, SFR's title was subject to Fannie Mae's first-priority Deed of Trust.  And as discussed in Fannie Mae's answering brief, *see* Dkt. No. 25.1 at 21-25, the terms of the Deed of Trust plainly authorized Fannie Mae to collect on the full amount due on the Loan by foreclosing on the property.  Yet SFR's request for relief would unwind that lawful foreclosure and award SFR the Property for only the delinquency amount—i.e., the amount required to bring the Loan current, not the full outstanding balance of the Loan.  ER-224. Any such order would restrain or affect the exercise of FHFA's powers or functions as Fannie Mae's conservator because as the unambiguous terms of the Deed of Trust authorized Fannie Mae to collect the full payoff amount through foreclosure.  As a result, Section 4617(f) precludes SFR's requested relief.

Section 4617(f) is unqualified and absolute.  The U.S. Supreme Court recognized in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), that Section 4617(f) "prohibits courts from taking '*any action* to restrain or affect the exercise of [the] powers or functions of the Agency as a conservator.'" *Id.* at 1770 (quoting Section 4617(f)) (emphasis added).  Courts across the country agree that "any" has "an

7

expansive meaning." *United States v. Gonzales*, 520 U.S. 1, 5 (1997); *see also Planned Parenthood Ariz. Inc. v. Betlach*, 727 F.3d 960, 969 (9th Cir. 2013) ("any means all" unless Congress provides otherwise); *Harris v. Garner*, 216 F.3d 970, 985 (11th Cir. 2000) (in interpreting a statute, "'no' means no"); *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 219 (D.D.C. 2020) (statutory language that "[n]o court may set aside any action or decision" "strips courts of jurisdiction to … set aside" any action or decision).

Indeed, the "plain statutory text [of Section 4617(f)] draws a sharp line in the sand against litigative interference—through judicial injunctions, declaratory judgments, or other equitable relief—with FHFA's statutorily permitted actions as conservator or receiver." *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 606 (D.C. Cir. 2017). As the Supreme Court unanimously held in *Collins*, "[Conservator] business decisions are protected from judicial review" by Section 4617(f). *Id.* at 1785. Because the outcome SFR seeks would undermine FHFA's statutory powers to, among other things, preserve and conserve the Enterprises' assets as well as to collect money the Enterprises are owed on long-defaulted loans, Section 4617(f) applies and bars that result.

The power to collect on obligations due the Enterprises is fundamental to FHFA's role as conservator. HERA gives the Agency broad authority generally to "preserve and conserve [the Enterprises'] assets and property" and "minimize[] the

8

amount of any loss realized in the resolution of cases," and specifically to "collect all obligations and money due" to the Enterprises. 12 U.S.C. § 4617(b)(2)(B)(ii), (b)(2)(B)(iv), (b)(11)(E). Applying Nevada law to undo the completed foreclosure, strip Fannie Mae and its conservatorship estate of the Property Fannie Mae now owns, and then award the Property to SFR for less than Fannie Mae was entitled to collect would plainly "restrain or affect the exercise of th[ose] powers or functions of [FHFA] as a conservator." 12 U.S.C. § 4617(f). SFR's requested relief would thus contravene FHFA's statutory powers to "preserve and conserve" Fannie Mae's Property, to "minimize[]" losses, and to "collect all obligations and money" Fannie Mae is due. 12 U.S.C. § 4617(b)(2)(B)(ii), (b)(2)(B)(iv), (b)(11)(E).

More specifically, SFR's requested relief would negate a substantial portion of Fannie Mae's security interest in the Property with no way for Fannie Mae to recoup the unrecovered amount. SFR asked the district court to enter "a declaration awarding SFR the Property for the amount in default at the time of the foreclosure sale." ER-224. On this long-defaulted Loan, foreclosing on the Property is the primary mechanism that allows Fannie Mae and its Conservator to realize the value of its asset. But here, SFR's requested relief would strip away the ability to foreclose on Fannie Mae's secured collateral and forever extinguish Fannie Mae's interest for far less than the amount owed to Fannie Mae. Without any security interest left in the Property, Fannie Mae would be unable to collect on the balance of the Loan, thus

resulting in additional losses to Fannie Mae's conservatorship estate and contravening Congress's intent that losses be minimized. Any such relief awarded to SFR would impair Fannie Mae—and by extension FHFA—from collecting on the obligations due to Fannie Mae. 12 U.S.C. § 4617(b)(2)(B)(ii). Section 4617(f) does not allow that.

Courts routinely hold that Section 4617(f), and the companion provision applicable to FDIC receiverships, 12 U.S.C. § 1821(j), supersede otherwise-applicable state law to protect a conservator or receiver's core power to collect obligations. *See, e.g.*, *Freeman v. FDIC*, 56 F.3d 1394, 1396 (D.C. Cir. 1995); *Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707 (8th Cir. 1996).[2]

For instance, the D.C. Circuit in *Freeman* concluded that the trial court correctly dismissed the plaintiffs' state-law claims without reaching the merits because the court lacked authority to enter the plaintiffs' requested relief. *See* 56 F.3d at 1396. Specifically, the D.C. Circuit held that 12 U.S.C. § 1821(j) "deprives the court of power to grant" a "declaratory judgment that would effectively 'restrain' the FDIC from foreclosing on [the property at issue]." *Id.* at 1299. SFR seeks exactly that type of declaratory judgment here. And in arriving at its conclusion, the

---

[2]      Courts applying HERA often seek guidance from FDIC cases interpreting corresponding provisions in the FDIC's organic statute. *See, e.g.*, *Roberts v. Fed. Hous. Fin. Agency*, 889 F.3d 397, 402-03 (7th Cir. 2018); *Jacobs v. Fed. Hous. Fin. Agency*, 908 F.3d 884, 895 (3d Cir. 2018); *Perry Cap.*, 864 F.3d at 605-06.

court in *Freeman* held that Section 1821(j)'s "sweeping ouster of courts' power" to interfere with the FDIC's ability to "collect all obligations and money due the institution" prohibited the district court from granting relief. *Id.* at 1398-99. This prohibition applied "regardless of [a] claimant's likelihood of success on the merits of his underlying claims." *Id.*

Similarly, the Eighth Circuit in *Tri-State* concluded that because the FDIC's statute gave it "the power to collect all obligations and money due the institution" in receivership, under Section 1821(j) the district court "lack[ed] jurisdiction" to grant relief on state-law claims for rescission, as "rescinding the agreements would act as an impermissible restraint on the ability of the FDIC to exercise its powers as receiver." 79 F.3d at 715. Thus, even assuming SFR stated a cognizable claim under Nevada law (it did not), Section 1821(j) and Section 4617(f) supersede any otherwise-applicable state law and prohibit courts from granting relief that interferes with the conservator or receiver's core powers.[3]

These decisions confirm that Section 4617(f) precludes the relief sought here. The Court should recognize and uphold that protection.

---

[3]     It makes no difference that the cases interpreting Section 1821(j) involve the FDIC's role as a receiver, not a conservator. The operative provisions—i.e., Section 1821(j) and Section 4617(f)—apply equally to receivers and conservators. *See* 12 U.S.C. § 1821(j) (stating that the provision applies to FDIC's actions "as a conservator or a receiver"); 12 U.S.C. § 4617(f) (stating that the provision applies to FHFA's actions "as a conservator or a receiver").

**B.    Section 4617(j)(3) Broadly Protects Fannie Mae's Deeds of Trust**

Another provision of HERA, Section 4617(j)(3), mandates that "[n]o property of [an FHFA conservatorship] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [Conservator], nor shall any involuntary lien attach to the property of [FHFA]." 12 U.S.C. § 4617(j)(3).

As courts have recognized, as long as the Enterprises remain in conservatorship, their lien interests, such as Fannie Mae's Deed of Trust here, constitute conservatorship property and thus fall under Section 4617(j)(3)'s protection. *See, e.g.*, *Skylights LLC v. Byron*, 112 F. Supp. 3d 1145, 1155 (D. Nev. 2015) (collecting cases).[4]  That is because the statute's protection "applies to *any property* for which the Agency serves as conservator," and it "does not require the Agency to actively resist" the impairment of its property in a particular instance. *Berezovsky v. Moniz*, 869 F.3d 923, 928-29 (9th Cir. 2017) (emphasis added). Rather, "the statutory language cloaks [conservatorship] property with Congressional protection unless or until the Agency affirmatively relinquishes it."

---

[4]    Courts applying the identically worded statute protecting FDIC receivership property, 12 U.S.C. § 1825(b)(2), have reached the same conclusion that mortgage liens constitute property for these purposes. *See, e.g.*, *Simon v. Cebrick*, 53 F.3d 17, 20 (3d Cir. 1995) ("[T]he term 'property' in § 1825(b)(2) encompasses all forms of interest in property, including mortgages and other liens."); *see also Cambridge Cap. Corp. v. Halcon Enters., Inc.*, 842 F. Supp. 499, 503 (S.D. Fla. 1993) ("This Court need look no further than [Section 1825(b)(2)] itself to determine that Congress has expressed its intent that no property of the FDIC—fee or lien—be subject to foreclosure without the FDIC's consent." (citation omitted)).

*Id.* at 929. Thus, Fannie Mae's interest in the Property at issue here falls within Section 4617(j)(3)'s purview.

And Section 4617(j)(3) applies *whenever* court action would make conservatorship property, including the Deed of Trust here, "subject to" a state-law process that impairs the Conservator's interests or deprives the Conservator of value. For example, courts applying the identically worded statute protecting FDIC receivership property, 12 U.S.C. § 1825(b)(2), agree that it applies broadly to prevent "any deprivation" of a protected interest, regardless of mechanism: The protection bars *any* action whereby "the end result is functionally the same as that of the actions that are specifically listed in the statute: the [receiver] loses the [p]roperty." *See Trembling Prairie Land Co. v. Verspoor*, 145 F.3d 686. 691 (5th Cir. 1998).

Critically, courts find a "reduction in the value of the receivership's assets" to constitute the type of "deprivation" covered by Section 4617(j)(3). *See, e.g.*, *S/N-1 REO Ltd. Liab. Co. v. City of Fall River*, 81 F. Supp. 2d 142, 150 (D. Mass. 1999) (cleaned up) (following *Trembling Prairie*). SFR's requested relief would constitute just such a deprivation. Indeed, SFR asked the district court to enter a "declaration awarding SFR the Property for the amount in default at the time of the foreclosure sale." ER-224. Thus, any order granting this relief would take the Property away from Fannie Mae, extinguish the portion of Fannie Mae's secured lien above the

13

amount in default, and eliminate the security—all for far less than the full balance of the Loan.  This relief is precisely the type of "reduction in the value of [FHFA's] assets" that Section 4617(j)(3) prohibits.

These decisions confirm that the statute's list of barred impairment mechanisms—"levy, attachment, garnishment, foreclosure, or sale"—is illustrative, not exhaustive.  And that makes sense, because Congress could not have cataloged every state-law mechanism that could impair or affect property, nor could it have anticipated every label that every state legislature might apply to each such mechanism in the future.  As a result, courts have repeatedly applied Section 4617(j)(3) and the substantively identical statute governing FDIC receiverships to broadly preclude *any* state-law impairment of protected property interests.

For example, in *Berezovsky*, this Court recognized that HERA provided broad, comprehensive protections to implement "Congress's clear and manifest goal of protecting the [Conservator's] assets *in the face of multiple potential threats*."  869 F.3d at 931 (emphasis added).  Finding Nevada's HOA foreclosure statute to be such a threat, this Court concluded that the statute stood "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" and that Section 4617(j)(3) thus "supersedes the Nevada superpriority lien provision." *Id.*  Moreover, when challenged in a subsequent action, this Court found "no cause to disturb [its] precedential decision."  *See Fed. Home Loan Mortg. Corp. v. SFR*

14

*Invs. Pool 1, LLC*, 893 F.3d 1136, 1147 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1618 (2019).

As these decisions recognize, Congress manifestly intended to protect the vitally important operations of the Enterprises during conservatorship from actions under state law that would deprive the Enterprises of their federally protected property interests. That protection shields the Enterprises' interests from state laws that would otherwise impair the safety and efficiency of the Enterprises' business operations and thereby present a substantial threat to the Nation's economy. Indeed, HERA was enacted, and FHFA was established, to counter that threat. Applying state law to unwind Fannie Mae's foreclosure sale or otherwise extinguish, diminish, or impair Fannie Mae's interest in the Property presents an equally compelling and concerning state-law threat to the mission and purpose of the conservatorships.

Because SFR's requested relief would constitute precisely the kind of deprivation that Section 4617(j)(3) is intended to protect against, HERA precludes SFR's claim.

### C.     Section 4617(a)(7) Bars SFR's Requested Relief

Finally, Section 4617(a)(7) also preempts any Nevada law that might support SFR's claim. Under that section of the federal statute, "[w]hen acting as conservator or receiver, the Agency *shall not be subject to the direction or supervision of ... any State* in the exercise of the rights, powers, and privileges of the Agency." 12 U.S.C.

15

§ 4617(a)(7) (emphasis added). Section 4617(a)(7) thus affirms Congress's intent for conservatorship property to be protected from the authority of individual states.

If the Court were to adopt SFR's flawed legal theory under Nevada law, it would allow the State of Nevada to extinguish or appropriate federal conservatorship assets and to limit the Conservator's authority to protect them from state action. Permitting a state-law wrongful foreclosure claim to extinguish conservatorship assets would run directly counter to the express language of this HERA provision: it would subject FHFA as Conservator and the Enterprises "to the direction or supervision" of a state, impermissibly limiting the exercise of the Conservator's federal authority. 12 U.S.C. § 4617(a)(7).

## II. Sound Policy Supports HERA's Application Here

Sound policy favors the application of HERA to prevent Enterprise liens from being extinguished by operation of state law. The powers granted by Congress to FHFA to "collect all obligations" due to the Enterprises and to "preserve and conserve" their assets are critical to fulfilling FHFA's role as Conservator. 12 U.S.C. §§ 4617(b)(2)(B)(ii), (iv). The restraint of FHFA's powers here by application of Nevada law would conflict directly with the express Congressional intent that FHFA be empowered to ensure the Enterprises' continuing safe-and-sound operations without judicial interference. *See* 12 U.S.C. § 4617(f). The breadth of the protections that Congress granted to FHFA reflects the importance of

16

its role as Conservator of the Enterprises, which were placed into conservatorships to safeguard against the catastrophic effects their failures would have had on the Nation's residential mortgage market and the broader economy.

One of Congress's principal objectives in enacting HERA and creating FHFA was to facilitate the recovery of the country's then-teetering economy by "foster[ing] liquid, efficient, competitive, and resilient national housing finance markets" and reducing taxpayer risk. *See* FHFA, Conservatorship, http://www.fhfa.gov/ Conservatorship. To allow the uncompensated extinguishment of the Enterprises' property interests would threaten FHFA's ability to accomplish those goals and its power to "put the [Enterprises] in a sound and solvent condition" and "preserve and conserve the[ir] assets and property." 12 U.S.C. § 4617(b)(2)(D).

Moreover, the expansive nature of HERA's powers and protections confirms that Congress intended to protect the Conservator from draconian outcomes such as total loss of a property interest based on an error, oversight, or omission. *See Beal Bank, SSB v. Nassau Cty.*, 973 F. Supp. 130, 133 (E.D.N.Y. 1997) (evaluating the FDIC's similar property-protection statute and concluding Congress did not intend for the FDIC as receiver to have to make individual decisions for that protection to be effective). Those protections are essential to the Conservator's ability to act swiftly and decisively to manage the Enterprises' affairs. The breadth of authority granted to FHFA allows it to conduct its business as Conservator efficiently and

17

effectively, without the unnecessary delay or second-guessing that would arise if statutes such as those at issue here could affect the Conservator's property rights or restrain the Conservator's powers. As noted above, the Supreme Court made crystal clear in *Collins* that "[Conservator] business decisions are protected from judicial review" by Section 4617(f). 141 S. Ct. at 1785.

Permitting SFR's claim to proceed would have ramifications beyond this case. It would establish that completed foreclosures involving Fannie Mae and Freddie Mac deeds of trust could be subject to litigative re-examination by investor-plaintiffs seeking retroactively to diminish the value of Conservator property interests. Indeed, a ruling in SFR's favor would invite other real-estate investment entities to bring copycat lawsuits designed to obtain the same financial windfall SFR seeks here. Such an invitation would constrict the residential real-estate market because properties would be tied up unnecessarily in litigation for years.

It would also strongly discourage investment in the regional housing-finance market. If, as SFR requests, the Enterprises can have the value of their liens retroactively reduced by tens of thousands of dollars, they would face increased losses on their security interests. And if, as SFR suggests, non-borrower titleholders are somehow entitled to obtain properties free and clear of otherwise valid deeds of trust without paying the full amount owed on the loans, then all lenders and loan owners, including the Enterprises, would suddenly find themselves with assets worth

far less than what they reasonably expected to acquire.  The consequences of such a ruling cannot be overstated:  It would force lenders to accept and account for significantly higher risks in lending, leading to instability, illiquidity, and a lack of affordability in the residential housing market.

SFR fails to identify any procedural defect on the part of Fannie Mae or its servicer at any point in the foreclosure process.  But even if it could, the expansive nature of HERA's powers and protections confirms that Congress intended to protect the Conservator from extreme outcomes such as the loss of a property interest based on a procedural error, oversight, or omission.  As the Fifth Circuit explained in an FDIC receivership case, "Congress enacted" expansive powers and protections "to ensure that [conservators and receivers] could act in a quick and decisive manner" in resolving troubled institutions.  *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 550 (5th Cir. 1993).  The Fifth Circuit explained that conservators and receivers:

> must make immediate and crucial decisions concerning assets, liabilities, accounts and properties involving huge amounts of money in a short period of time.  Allowing [them] … to act quickly in these volatile situations enables it to adjust to rapidly changing markets, to collect funds, to secure and preserve the value of the assets it manages, and swiftly to bring stability to the institution.

*Id.*; *see also 218-300 Joint Venture v. Onion*, 938 F.2d 35, 39 (5th Cir. 1991) (similar).  FHFA would not be able to act swiftly and decisively to manage the

Enterprises' affairs if its lien interests could be extinguished or retroactively diminished based on alleged procedural defects in the foreclosure process.

And Congress intended provisions like Section 1821(j) and Section 4617(f) to apply even in the case of error. As the Eleventh Circuit explained in applying Section 1821(j), "Congress contemplated the reality that the [receiver] may err," but "§ 1821(j) would still clearly bar judicial restraint …." *Bank of Am., N.A. v. Colonial Bank*, 604 F.3d 1239, 1244 (11th Cir. 2010). Thus, even if SFR had identified any error in the foreclosure process (it did not), HERA's protections would still apply.

A ruling from this Court that HERA prohibits the impairment of the Enterprises' deeds of trust by operation of state law would clarify the law for lower courts and market participants. The Supremacy Clause and HERA require this outcome, and a declaration to that end from this Court would promote consistency and efficiency throughout the judicial system. Affirmance by this Court would also reassure the Enterprises—by far the largest supporters of the Nation's residential housing market—that they will receive the benefit of their bargain when investing in mortgage loans, and thus would enable them to continue pursuing their public mission of providing stability, liquidity, and affordability in the housing market.

As Fannie Mae's answering brief explains, SFR's claim in this case represents a strategic attempt to pry the door open for more meritless property-related litigation in Nevada. *See* Dkt. No. 25.1 at 18-21. In addition to being contrary to both federal

20

and Nevada law, SFR's attempt would wreak havoc on the housing market. Accordingly, this Court has a sound legal basis to affirm the district court's judgment on HERA's preclusive effect, and policy reasons support doing so.

## CONCLUSION

The district court properly rejected SFR's meritless wrongful-foreclosure claim. This Court should affirm the judgment of the district court.

DATED this 3rd day of October, 2024.

ARNOLD & PORTER KAYE SCHOLER LLP

*/s/ Michael A.F. Johnson*
Michael A.F. Johnson
601 Massachusetts Ave., NW
Washington, DC 20001
Tel: (202) 942-5783
Fax: (202) 942-5999
michael.johnson@arnoldporter.com

*Counsel for Amici Curiae Federal Housing Finance Agency and Federal Home Loan Mortgage Corporation*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this amicus brief complies with the type-volume limitations as set forth in Rule 29(a)(5) of the Federal Rules of Appellate Procedure.  The brief has been prepared using 14-point Times New Roman font and contains a total of 4,454 words proportionally spaced, excluding those sections exempted by Rule 32(f).

DATED this 3rd day of October, 2024.


*/s/ Michael A.F. Johnson*
Michael A.F. Johnson

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 3, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice of such filing to all parties.

*/s/ Michael A.F. Johnson*
Michael A.F. Johnson