CASE NO. 24-488

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

SFR INVESTMENTS POOL 1, LLC,

PLAINTIFF –APPELLANT,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

DEFENDANT – APPELLEE,

---

ON APPEAL FROM THE U.S. DISTRICT COURT FOR THE DISTRICT OF NEVADA
THE HONORABLE GLORIA M. NAVARRO | CASE NO. 2:22-cv-01942-GMN-MDC

---

APPELLANT'S REPLY BRIEF

---

KAREN L. HANKS, ESQ.
NEVADA BAR NO. 9578

**HANKS LAW GROUP**
7625 Dean Martin Dr., Ste. 110
Las Vegas, NV  89139-5974
Email: karen@hankslg.com
Telephone: (702) 758-8434
Facsimile: (725) 239-3415
*Attorneys for Appellant*

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................... ii

TABLE OF AUTHORITIES ................................................................ iii

ARGUMENT ................................................................................... 7

I.     THIS COURT HAS JURISDICTION ............................................ 7

II.    ACCELERATION AND WHOLLY DUE ARE SYNONYMOUS. ................... 8

III.   FANNIE MAE NEVER ADDRESSES SFR'S ARGUMENTS. .................. 12

IV.    THE LAW DOES NOT REQUIRE SFR TO PROVE A NEGATIVE ........... 14

V.     NEVADA LAW SUPPORTS SFR'S CLAIM ................................. 16

VI.    THE SUPREMACY CLAUSE HAS NO APPLICATION HERE. ................ 19

CONCLUSION ............................................................................... 24

CERTIFICATE OF COMPLIANCE ....................................................... 25

## TABLE OF AUTHORITIES

### CASES

*4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 195 Wash. App. 423,
382 P.3d 1 (2016) ............................................................8

*Am. States Ins. Co. v. Dastar Corp.*,
318 F.3d 881 (9th Cir. 2003) ...........................................7

*Bridges v. Nationstar*,
515 P.3d 1270, 253 Ariz. 532 (Ariz. S. Ct. 2022).............. 10, 18

*Brosnahan v. Caliber Home Loans, Inc.*,
2023 WL 4743253 (July 25, 2023) (Ct. App. Az. Div. 1) ...........18

*Brush v. Office of Personnel Mgmt. (OPM)*, 982 F.2d 1554
(Fed.Cir.1992)..................................................................14

*Clayton v. Gardner*,
107 Nev. 468, 813 P.2d 997  (1991)..................................9

*Cnty. of Sonoma v. Fed. Hous. Fin. Agency*, 710 F.3d 987 (9th Cir.
2013) ...........................................................................19

*Concha v. London*,
62 F.3d 1493 (9th Cir. 1995) ...........................................6

*Daisy Tr. v. Fed. Nat'l Mortg. Ass'n*, No. 21-15595, 2022 WL 874634
(9th Cir. Mar. 24, 2022)....................................................10

*Elkins v. United States*,
364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ...................13

*Flores v. United States*,
551 F.2d 1169 (9th Cir.1977) ............................................13

*Galaza v. Wolf*,
954 F.3d 1267 (9th Cir. 2020) ..........................................6

*Hamilton v. State Farm Fire & Cas. Co.*,
270 F.3d 778 (9th Cir. 2001) ...........................................17

iii

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ...................................................................................................7

*Jordan v. Nationstar Mortgage, LLC*,
240 F.Supp.3d 1114 (E.D. Wash. 2017)...................................... 21, 23

*Latahotchee v. Comm'r of Soc. Sec. Admin.*, No. CV-19-05668-PHX-DWL,
2021 WL 267909 (D. Ariz. Jan. 27, 2021)......................................12

*Leon Cnty., Fla. v. Fed. Hous. Fin. Agency*, 700 F.3d 1273 (11th Cir. 2012) .................................................................................................20

*Lew v. Moss*,
797 F.2d 747 (9th Cir.1986) .............................................................13

*LV Debt Collect, LLC v. Bank of New York Mellon as Tr. for Certificateholders of CWMBS, Inc., CHL Mortg. Pass-Through Tr. 2005-02, Mortg. Pass-Through Certificates, Series 2005-02,*
534 P.3d 693 (Nev. 2023).................................................... 8, 9, 17

*Nanopierce Techs., Inc. v. Depository Tr. & Clearing Corp.*,
168 P.3d 73 (Nev. 2007).....................................................................19

*Perry Capital LLC v. Mnuchin*,
864 F.3d 591 (D.C. Cir. 2017)...........................................................20

*Posner v. U.S. Bank, N.A.*,
545 P.3d 1150 (Nev. 2024).................................................................9

*Roberts v. Fed. Hous. Fin. Agency*,
889 F.3d 397 (7th Cir. 2018) .............................................................19

*Robinson v. Fed. Hous. Fin. Agency*,
876 F.3d 220 (6th Cir. 2017) .............................................................20

*Sharpe v. FDIC*,
126 F.3d 1147 (9th Cir. 1997) ...........................................................20

*U.S. Bank Nat'l Ass'n v. Simon*,
216 A.D.3d 1041, 191 N.Y.S.3d 61 (2023)........................................8

*U.S. v. Willis,*
    795 F.3d 986, (9th Cir. 2015.) .......................................................12

*United States v. Alabama,*
    691 F.3d 1269 (11th Cir. 2012) ....................................................19

*United States v. Feterl,*
    849 F.2d 354 (8th Cir. 1988) ..........................................................9

*United States v. Vieira,*
    711 F. Supp. 3d 1159 (C.D. Cal. 2024) ........................................12

*Valle del Sol Inc. v. Whitling,*
    732 F.3d 1006  (9th Cir. 2013) .....................................................19

*Waterview Management Co. v. FDIC,*
    105 F.3d 696 (D.C. Cir. 1997).......................................................21

## STATUTES

12 U.S.C. § 4617(a)(7).........................................................................22

12 U.S.C. § 4617(j)(3) .........................................................................22

12 U.S.C. 4617(f)................................................................................19

NRS 107.080(3) ..................................................................................12

NRS 40.427 .........................................................................................12

NRS 40.451 .........................................................................................12

NRS 40.462 .........................................................................................15

## OTHER AUTHORITIES

OIG Report: FHFA's Conservator Approval Process for Fannie Mae
    and Freddie Mac Business Decisions available online at
    www.fhfaoig.gov. ..........................................................................21

v

Restatement (Third) of Property (Mortgages) Section 8.1 ......................................17

## ARGUMENT

### I.   THIS COURT HAS JURISDICTION.

Fannie Mae's only argument as to jurisdiction is this Court should ignore stated representations in SFR's briefing regarding its intent to dismiss with prejudice, remand this case so SFR can involve the district court in the dismissal, then come back to this Court. This achieves nothing for either party and would be a serious waste of judicial time and resources. Under *Concha v. London*, 62 F.3d 1493, 1506 (9th Cir. 1995), a court can consider circumstances outside the dismissal document to determine whether it was intended to be with prejudice. If in fact the Court deems the dismissal is with prejudice, then this Court has jurisdiction. *Id.* at 1509 ("We therefore treat the Conchas' 41(a)(1) notice as a dismissal with prejudice as to all defendants, and conclude that we have jurisdiction…")

SFR has stated, through its briefing to this Court, that its intent was to dismiss with prejudice. While Fannie Mae claims SFR has not filed another voluntary dismissal, SFR does not believe it can for two reasons: first, there is already a dismissal on file; and second, this court has jurisdiction (at least for now). Nevertheless, this still would not satisfy the second factor under *Galaza* i.e. the district court's participation, which SFR acknowledged in its opening brief. *See Galaza v. Wolf*, 954 F.3d 1267 (9th Cir. 2020) But as highlighted in the opening brief, this factor exists so there exists a "clear indication of finality[,]" so as to avoid

"confus[ing] the parties and the public." *Galaza*, 954 P.3d at 1272 quoting *Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 889 (9th Cir. 2003). Given SFR's stated representations, and the fact there are only two parties to this appeal, there is zero risk of confusion. In fact, neither Shellpoint nor Fannie Mae ever questioned whether the dismissal was with prejudice; they never even raised the issue. That is because they too understood it was with prejudice. It was this Court that issued an order to show cause, and then discharged the order reserving SFR's right to raise the issue in its opening brief, which SFR did. Frankly, it is mind-boggling Fannie Mae even pushes for a purely procedural action. If this Court dismisses the appeal for lack of jurisdiction, SFR will immediately move to dismiss with prejudice and then re-file its appeal thus putting the parties right back to where they already are.

For these reasons, SFR asks that the Court treat SFR's dismissal as "with prejudice" such that this Court does have jurisdiction.

## II.   ACCELERATION AND WHOLLY DUE ARE SYNONYMOUS.

Fannie Mae's answering brief is premised on this false notion, and a waived issue at that,[1] that the Nevada Supreme Court has ruled acceleration and wholly due

---

[1] Below Fannie Mae never raised the issue that acceleration and wholly due are distinct concepts. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) ("[A]n issue will generally be deemed waived on appeal if the argument was not 'raised sufficiently for the trial court to rule on it.'" (citation omitted)).

are distinct concepts. Nowhere has the Nevada Supreme Court ever said this. While the Nevada Supreme Court and this Court have found certain acts were insufficient to accelerate the loan, neither has ever held the terms are legally different. The terms mean the same thing; the whole debt is due. When a loan debt is accelerated, "the entire balance of the debt accrues and the statute of limitations begins to run on the full amount due." *See U.S. Bank Nat'l Ass'n v. Simon*, 216 A.D.3d 1041, 1042, 191 N.Y.S.3d 61, 63 (2023); *4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 195 Wash. App. 423, 435, 382 P.3d 1, 6–7 (2016) (acceleration of the maturity date of a promissory note is a declaration the whole debt is due.)

In fact, in *LV Debt*[2] the case which Fannie Mae relies on belies the argument it espouses here because in *LV Debt* the Nevada Supreme Court used the terms interchangeably. To be clear, the issue in *LV Debt* was whether (1) a notice of default could render a debt wholly due in and of itself; and (2) whether the subject notice of default accelerated the loan thereby rendering it wholly due for purposes of NRS 106.240. At no time, however, did the Nevada Supreme Court ever say it need not reach this issue because acceleration and wholly due are distinct concepts. Instead, it analyzed the language of the notice of default against the backdrop of NRS

---

[2] *LV Debt Collect, LLC v. Bank of New York Mellon as Tr. for Certificateholders of CWMBS, Inc., CHL Mortg. Pass-Through Tr. 2005-02, Mortg. Pass-Through Certificates, Series 2005-02,* 534 P.3d 693 (Nev. 2023).

107.080 and ruled the notice of default did not accelerate the loan because acceleration of a debt must "be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lender's intention." *LV Debt* citing *Clayton v. Gardner,* 107 Nev. 468, 470, 813 P.2d 997, 999 (1991) (quoting *United States v. Feterl,* 849 F.2d 354, 357 (8th Cir. 1988)). The Court reasoned acceleration was not so clear and unequivocal because the notice of default provided that the borrower could cure the default "upon the payment of the amounts required by [NRS 107.080] without requiring payment of that portion of the principal and interest which would not be due had no default occurred." In other words, because the borrower could pay something less than the whole debt, the loan was not accelerated/wholly due. *LV Debt*, 534 P.3d at 699 citing *Clayton*, 107 Nev. at 470, 813 P.2d at 999. Thus, the reason the loan was not deemed wholly due was because the Court found BNYM did not accelerate the debt, not because the two concepts are distinct.

The same is true for *Posner v. U.S. Bank, N.A.*, 545 P.3d 1150 (Nev. 2024). This case involved the review of a denial of a preliminary injunction. The Nevada Supreme Court ruled that "despite the language in U.S. Bank's judicial foreclosure complaint that could be construed as accelerating the Posners' loan, U.S. Bank's judicial foreclosure action was insufficient to trigger NRS 106.240's 10-year time frame." *Id.* at 1153. In other words, because the language was not sufficient to accelerate the loan, the loan was not wholly due for purpose of NRS 106.240. This

proves the two concepts are one and the same because if Fannie Mae's interpretation is correct, then there would be no need for the court to rule the language in the judicial foreclosure complaint was insufficient to accelerate the debt. If acceleration has no impact on a loan being wholly due, then who cares if the language accelerates or does not accelerate. And yet the Nevada Supreme Court took the time to do this analysis and render a holding, thus proving if a loan is accelerated it is likewise wholly due. And for purposes of this appeal, the inverse is true, if a loan is NOT accelerated, then the whole debt cannot be foreclosed.

SFR is not twisting arguments; instead, the banks have created this dichotomy. But Fannie Mae, and other entities similarly situated, in order to avoid the impact of NRS 106.240, have argued, and most importantly, convinced courts that documents the world always understood accelerated the loan, no longer accelerate the loan. The notice of intent to accelerate does not accelerate the loan,[3] the notice of default does not accelerate the loan,[4] and the notice of sale does not accelerate a loan.[5] This begs the question, then what does? That is the crux of SFR's claim in this matter. By current case law, the loan was not accelerated at the time of the foreclosure sale, thus

---

[3] *Daisy Tr. v. Fed. Nat'l Mortg. Ass'n*, No. 21-15595, 2022 WL 874634, at *2 (9th Cir. Mar. 24, 2022) ("whether Fannie Mae issued an unrecorded acceleration notice in 2009 is legally irrelevant. Such a notice could not have rendered its debt 'wholly due.'")

[4] *LV Debt*, 534 P.3d at 698.

[5] *Bridges v. Nationstar*, 515 P.3d 1270, 253 Ariz. 532, 536 (Ariz. S. Ct. 2022) (holding a notice of sale did not accelerate the debt.)

SFR is entitled to excess proceeds. To be clear, SFR's claim does not dispute the validity of the foreclosure sale, only the amount foreclosed upon.

### III.   FANNIE MAE NEVER ADDRESSES SFR'S ARGUMENTS.

Fannie Mae fails to address Section I and II of SFR's opening brief, and instead simply regurgitates the same arguments it made to the district court, namely, the loan was accelerated because a notice of default issued followed by a notice of sale. The very argument Fannie Mae made below, and again here, is the same arguments SFR argued rendered the loan wholly due in the context of NRS 106.240 in countless other cases, and yet Fannie Mae and others similarly situation convinced courts otherwise. Specifically, SFR argued the deed of trust gives the lender the remedy of acceleration, that lenders often exercise this remedy by way of a letter titled, "Notice of Intent to Accelerate." That once the deadline in that letter passes, a notice of default issues which, like here, states, "[t]he present Beneficiary under such Deed of Trust, has declared and does hereby declare all sums secured thereby immediately due and payable…" (ER-137-144.) This notice is then followed by a notice of sale. But despite SFR arguing these actions accelerated the loan, the courts at every turn said no.

Now, when Fannie Mae needs the loan to be accelerated, all of the same things SFR argued are now being offered as proof the loan is accelerated. Fannie Mae cannot have it both ways. Fannie Mae made this bed, now it needs to lie in it. SFR

has highlighted why the district court's order was error, and yet Fannie Mae does not address a single point made by SFR. *See United States v. Vieira*, 711 F. Supp. 3d 1159, 1169 (C.D. Cal. 2024) (failure to argue in its answering brief an issue raised by appellant waives the issue) citing *U.S. v. Willis*, 795 F.3d 986, 997 n.11 (9th Cir. 2015.) *See also, Latahotchee v. Comm'r of Soc. Sec. Admin.*, No. CV-19-05668-PHX-DWL, 2021 WL 267909, at *3 (D. Ariz. Jan. 27, 2021) ("Defendant does not bother to address Plaintiff's argument…Defendant therefore concedes the correctness of Plaintiff's argument on that point.").

SFR does not dispute the borrower had/has an obligation to pay back the entirety of the debt. But the fact remains that the obligation was allowed to be paid back over time, in set monthly installment amounts. Thus, to collect on all of these installments, the debt must be accelerated. Fannie Mae does not address a single point on this issue. It fails to address the terms of the Note cited by SFR, the terms of the Deed of Trust cited by SFR, NRS 40.427, NRS 40.451, NRS 107.080(3), the language in the Notice of Default, and NRS 40.462(2)(b). It simply rests on the fact that a foreclosure sale happened. But the district court's order holding that by virtue of there being a foreclosure sale, the loan is automatically accelerated no matter the parties' contracted terms, is not supported by Nevada law. Thus, SFR pled a plausible claim for relief, and dismissal was improper.

**IV.**     <u>THE LAW DOES NOT REQUIRE SFR TO PROVE A NEGATIVE.</u>

Fannie Mae argues the district court's dismissal was appropriate because SFR did not prove the loan was NOT accelerated. In other words, Fannie Mae postures at the initial stage of filing a complaint, SFR was required to have evidence of negative. This defies the motion to dismiss standard, but more importantly, it requires not only for SFR to have evidence of a negative, but also to have it before it even conducts discovery. This is untenable.

As the U.S. Supreme Court has noted, "as a practical matter it is never easy to prove a negative." *Elkins v. United States*, 364 U.S. 206, 218, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). In light of this, this Court has found common sense and fairness dictate against requiring a party to prove a negative fact, and instead, shift the burden on to the party with superior access to the affirmative information. *See Flores v. United States*, 551 F.2d 1169, 1175-76 (9th Cir.1977) (placing burden of production on the government regarding proof of an individual's ownership interest in a property subject to levy, rather than requiring the taxpayer to "prove a negative fact about which he has absolutely no information."); *Lew v. Moss*, 797 F.2d 747, 754-55 (9th Cir.1986) (shifting burden of production on defendant who claimed no subject matter jurisdiction because he was no longer domiciled in California).

Yet another court shifted the burden of proving a statutorily required notice existed onto the defendant because the defendant was the party in possession of the

proof, rather than plaintiff. *Brush v. Office of Personnel Mgmt. (OPM)*, 982 F.2d 1554, 1560–61 (Fed.Cir.1992) (holding that the burden was on the OPM to produce a copy of a notice required by statute). Here, all SFR has access to is the public record, and in light of various court decisions holding neither the notice of default nor the notice of sale accelerates the loan, it can offer not further allegations at this time. In contrast, Fannie Mae is in the superior position with respect to any document sent to the borrower which accelerated the loan, to the extent one even exists. Thus, at the dismissal stage, it is inappropriate to require SFR to have this proof.

The documents available to SFR at this juncture i.e. the publicly recorded notices, coupled with the law, do not establish the loan was accelerated, and yet it is these two documents upon which the district court relied to determine the loan was accelerated and therefore SFR's claim failed.

Fannie Mae misunderstands SFR's argument regarding the notice of default. SFR is not claiming the notice is deficient per se, rather, it cannot serve as the notice of intent to accelerate as the district court found because it does not comport with Paragraph 22 of the Deed of Trust. The fact that SFR is a stranger to the Deed of Trust is of no consequence; SFR does not seek to enforce this provision nor does its claim sound in any breach of this provision. Instead, SFR is pointing out the error in the district court's conclusion that the notice of default constituted a notice of intent to accelerate. It could not possibly because it does not comport with Paragraph 22.

Likewise, SFR does not argue Nevada law mandates the information in Paragraph 22 always be included in a notice of default, rather, if the notice of default is treated as the notice of intent to accelerate, then it must necessarily comply with the contractual requirements of Paragraph 22. Here because it does not, the district court erred in treating the notice of default as a notice of intent to accelerate. Again, Fannie Mae claims merely omitting the information does not mean it was never provided, seemingly suggesting other documents exist to show the information was provided, but none of these documents were presented to the district court, and SFR cannot prove this negative fact.

## V.   NEVADA LAW SUPPORTS SFR'S CLAIM

SFR does not plead a claim under NRS 40.462. SFR only mentions NRS 40.462 once in its amended complaint at Paragraph 57 and the purpose in citing this provision is to explain Fannie Mae is only entitled to credit bid and collect those "obligation[s] being enforced by the foreclosure sale." (ER-217-226). In other words, if Fannie Mae is only entitled to collect those obligations being enforced by the foreclosure sale, it stands to reason it can only credit bid up to that amount. Fannie Mae acknowledges this tenant when it states, "[m]ortgage lending depends on the lender's ability to recover on **defaulted** obligations by enforcing the

obligation secured by a deed of trust."[6] But as alleged in SFR's complaint, and based on current Nevada law, the loan was not accelerated so the only defaulted obligations were the past due installments, not the future installments. *See* Restatement (Third) of Property (Mortgages) Section 8.1 ("An acceleration provision is a term in a mortgage, or in the obligation it secures, that empowers the mortgagee upon default by the mortgagor to declare the full mortgage obligation immediately due and payable.") Further, in the absence of acceleration the mortgagee can only foreclose on past due installments or wait until the amortization period expires. *Id.* at comment a.

Additionally, SFR does not dispute the terms of the Deed of Trust allow the lender to accelerate the debt and make it wholly due now, as opposed to over time, up to and including the maturity date. Additionally, SFR's claim does not challenge the foreclosure sale complied with NRS Chapter 107, in terms of noticing and the power to foreclose, rather, the amount upon which Fannie Mae foreclosed was more than that which was in default because Fannie Mae did not accelerate the debt, and thus SFR is entitled to declaratory relief that Fannie Mae illegally credit bid such that SFR's bid of $310,000 should have been the winning bid.

SFR, since 2019 (maybe even earlier), has argued Paragraph 22 of the Deed of Trust allows for acceleration and that acceleration is accomplished via letter.

---

[6] ER-066 at lines 22-23 (emphasis added.)

Shellpoint, Fannie Mae's servicer/agent, even confirmed SFR's reading of Paragraph 22. Specifically, in Case No. 2:18-cv-01375-JAD-VCF, Shellpoint testified the notice referenced in Paragraph 22 takes the form a letter titled "notice of intent to accelerate" and it is **always** sent before the servicer issues a notice of default; typically 45 days from date of default.[7] Additionally, when the loan is owned by Fannie Mae, Fannie Mae' servicing guide mandates an acceleration letter be sent within the 75th day of delinquency.[8]

But despite disputing this argument in countless cases,[9] now in an about face, Fannie Mae argues SFR's theory the loan was not accelerated prior to the sale is "nonsensical" because Paragraph 22 of the Deed of Trust triggers the lender's ability to accelerate. SFR agrees! But Fannie Mae convinced this Court that an unrecorded letter sent via Paragraph 22 of the Deed of Trust cannot accelerate. *See Daisy Tr.*, 2022 WL 874634. Then the Nevada Supreme Court ruled a notice of default cannot accelerate a loan either. *LV Debt*, 534 P.3d at 698. Fannie Mae is judicially estopped from arguing the opposite now. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

Then there are other jurisdictions which have held a notice of sale did not accelerate the loan. *See Brosnahan v. Caliber Home Loans, Inc.*, 2023 WL 4743253

---

[7] ER-033 at fn 14.
[8] *Id.* at fn 15.
[9] *Id.* at fn 16.

(July 25, 2023) (Ct. App. Az. Div. 1) citing *Bridges*, 253 Ariz. at 534. Fannie Mae's attempt to distinguish these cases fails. The fact that both cases involved the debtor/borrower and did not go to sale does not impact or have any bearing on the ultimate finding in *Brosnahan* that because "[t]he First NOTS, which does not mention acceleration, [it] cannot reasonably be construed as providing a clear notice of acceleration"[10] or the ultimate holding in *Bridges* that a notice of sale by itself is not an affirmative act that accelerates the debt. *Bridges*, 253 Ariz. at 536.

Nevada requires the same affirmative, clear and unequivocal act. *Clayton,* 107 Nev. at 470, 813 P.2d at 999. Although Fannie Mae acknowledges its right and need to accelerate the loan, it never actually points to an act that did this. That is the crux of SFR's claim. If Fannie Mae can prove this act, then SFR's claim will fail, but SFR's complaint is sufficiently pled based on the information available now, which shows the loan was not accelerated. Thus, dismissal was error.

## VI.   THE SUPREMACY CLAUSE HAS NO APPLICATION HERE.

Fannie Mae fails to present a full preemption analysis which requires a court to determine whether a federal statute and a state statute conflict either expressly or implicitly. Express preemption arises when the text of a federal statute undoubtedly manifests Congress's intent to displace state law. *See Valle del Sol Inc. v. Whitling*,

---

[10] *Id.*

732 F.3d 1006, 1022 (9th Cir. 2013) (quoting *United States v. Alabama*, 691 F.3d 1269, 1281 (11th Cir. 2012)). Implicit preemption arises when the federal law actually conflicts with the state law. *Nanopierce Techs., Inc. v. Depository Tr. & Clearing Corp.*, 168 P.3d 73, 80 (Nev. 2007). But even with implied preemption "Congress's intent ... must be clear and manifest." *Id.* at 79. "Conflict preemption analysis examines the federal statute as a whole to determine whether a party's compliance with both federal and state requirements is impossible or whether, in light of the federal statute's purpose and intended effects, state law poses an obstacle to the accomplishment of Congress's objectives." *Id.* at 80.

Not only is Fannie Mae's motion devoid of any actual conflict analysis, Fannie Mae also fails to identify what Nevada statute supposedly conflicts with HERA. What is apparent, however, is the proffered sections of HERA have no application here. The first proffered section is 12 U.S.C. 4617(f) which states "no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver." This section only protects actions taken by the FHFA that fall within its statutory powers, from court intervention. *See Cnty. of Sonoma v. Fed. Hous. Fin. Agency*, 710 F.3d 987, 992 (9th Cir. 2013) ("[T]he anti-judicial review provision is inapplicable when FHFA acts beyond the scope of its conservator power."). Thus, while the shelter is sweeping, its scope is not boundless. *Roberts v. Fed. Hous. Fin. Agency*, 889 F.3d 397, 401 (7th Cir. 2018)

citing *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 606 (D.C. Cir. 2017); *Robinson v. Fed. Hous. Fin. Agency*, 876 F.3d 220, 227–28 (6th Cir. 2017); *Leon Cnty., Fla. v. Fed. Hous. Fin. Agency*, 700 F.3d 1273, 1278 (11th Cir. 2012). As the *Roberts* Court noted, "Section 4617(f) will not protect the Agency if it acts either ultra vires or in some third capacity." *Roberts*, 889 F.3d at 401. Here, FHFA's lack of involvement in the inciting foreclosure stems from FHFA having delegated responsibility for "normal business activities and day-to-day operations" back to Fannie Mae and Freddie Mac shortly after placing them in conservatorship in 2008. Notably, the responsibilities delegated to the Enterprises by FHFA include, among other things, "decisions about individual mortgages, property sales, or foreclosures." *See* OIG Report: FHFA's Conservator Approval Process for Fannie Mae and Freddie Mac Business Decisions available online at www.fhfaoig.gov.

Additionally, in *Sharpe v. FDIC*, 126 F.3d 1147, 1155 (9th Cir. 1997), the Ninth Circuit held that the near-identical anti-injunction provision that applies to the FDIC allows equitable remedies in contract cases because the statute "does not authorize the breach of contracts." Similarly, HERA does not authorize FHFA to displace or violate state foreclosure law or contract law. Nothing in the statute's text even hints that Congress intended to displace state contract or real property law – especially when the contracts FHFA succeeded to are expressly subject to those laws. "[T]o hold that the federal government could simply vitiate the terms of

existing assets, taking rights of value from private owners with no compensation in return, would raise serious constitutional issues" under the Fifth Amendment's Takings Clause. *Waterview Management Co. v. FDIC*, 105 F.3d 696, 700 (D.C. Cir. 1997).

Simply put, 4617(f) does not insulate the FHFA from all state law. Indeed, there are other parts of HERA which do expressly preempt FHFA from state law, but section 4617(f) is not one of them. As one court noted, "HERA's legislative history and text are void of any intent to allow the FHFA to circumvent the Enterprises' long-standing compliance with state specific mortgage foreclosure laws." *Jordan v. Nationstar Mortgage, LLC*, 240 F.Supp.3d 1114, 1124 (E.D. Wash. 2017). Again, without any specific law cited by Fannie Mae, SFR is left to surmise Fannie Mae claims all Nevada law that is relevant to this case is preempted.

This is a brazen injudicious position. Fannie Mae claims no court, including this Court, can grant any party relief based on a foreclosure sale in Nevada, because, Fannie Mae posits, such relief is a "restriction" upon FHFA's "exercise of [the] powers or functions of the Agency as a conservator." The importance of what Fannie Mae attempts to now argue cannot be understated. If Fannie Mae's position were accepted, no court could ever unwind or grant other relief related to a foreclosure of a deed of trust that was owned by Fannie Mae or Freddie Mac – which are more than 2/3 of all the home loans issued in the United States. By extension, Nevada's

foreclosure mediation program would also be a judicial "restraint" on the FHFA's powers, as would be any attempt to enforce the procedural requirements for foreclosure under NRS 107. To paraphrase Fannie Mae's position – no state court can do anything to stop the FHFA from collecting or foreclosing on a home loan owned by Fannie Mae or Freddie Mac – even if they violate Nevada law when doing it. According to Fannie Mae – it can do anything it wants, entirely unchecked by this Court, so long as it purports to do so in the name of collecting, including, as is the case here, foreclosing on a deed of trust without accelerating the debt, but credit bidding and collecting as if the loan was accelerated. This court should lose little sleep in rejecting such a notion.

The second proffered section is 12 U.S.C. § 4617(j)(3), but this section only prohibits four distinct acts without the FHFA's consent, levy, attachment, garnishment or foreclosure. Nothing by way of SFR's claim involves any of these four acts. SFR seeks declaratory relief; it does not seek to levy, attach, garnish or foreclose on FHFA property.

The third proffered section is 12 U.S.C. § 4617(a)(7), but this section states the "[A]gency shall not be subject to the direction or supervision of . . . any State in the exercise of the rights, powers, and privileges of the Agency." Nothing about SFR's claim subjects the FHFA to State supervision or direction. Nothing under HERA provides the Agency can never be subjected to state law. In fact, the court in

*Jordan*, held that 12 U.S.C. 4617(A)(7) only stands for the notion that the FHFA is not subject to the direction or supervision of any other agency. *Jordan,* F. Supp. 3d at 1122. Should this court find in favor of SFR, such a ruling would not subject the FHFA to the supervision or direction of another agency.

This Court should reject Fannie Mae's incomplete, and irrelevant preemption argument.

### CONCLUSION

SFR stated a plausible claim for relief, and therefore this Court should reverse and remand.

DATED this 19th day of December, 2024.

/s/ Karen L. Hanks
KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
*Attorneys for Appellant*

### CERTIFICATE OF COMPLIANCE

This brief complies with the length limits permitted by Ninth Circuit Rule 32-1. The brief is 4,490 words, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

DATED:  December 19, 2024.

**HANKS LAW GROUP**

*/s/ Karen L. Hanks*
KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
*Attorneys for Appellant*

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 19, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Karen L. Hanks*
*Hanks Law Group*